[No. F013360. Fifth Dist. Jan. 22, 1991.]

In re GE M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
GE M., Defendant and Appellant.

---

---

## COUNSEL

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Jane N. Kirkland and Susan J. Orton, Deputy Attorneys General, for Plaintiff and Respondent.

---

## OPINION

**BEST, P. J.**—Defendant was adjudged a ward of the juvenile court based on a finding that he had violated Penal Code[1] sections 422 (terrorist threats) and 417, subdivision (a)(2) (drawing or exhibiting firearm in a rude, angry

---

[1] All statutory references are to the Penal Code unless otherwise noted.

or threatening manner). Defendant's only contention on appeal is that section 422 is inapplicable to the confrontation at issue because it was not shown in the trial court that his conduct was motivated by membership in a street gang. However, neither the plain meaning nor the legislative history of the statute supports defendant's conclusion that street gang membership is an element of the offense. Thus, we reject defendant's interpretation of section 422 and affirm the judgment.

## STATEMENT OF THE FACTS

The victim, Paul Blankenship, and his friend, Chad Yager, were driving home from high school when they noticed they were being followed by Peter Chang and defendant. The day before, a group of Blankenship's Caucasian friends from the football team had been involved in a fight at school with a group of Asian students, including defendant. According to defendant, it was Bobby Herman who instigated this racial confrontation at school.

When the cars stopped, defendant got out and approached Blankenship and Yager, stating, "This isn't school. This is the streets, babe." Defendant was "jumping up and down" and "acting crazy." Defendant asked Blankenship if he was "Bobby's friend," and when Blankenship replied that he was, defendant pulled a gun from his belt. Defendant quickly walked toward Blankenship, cocked the gun, and pointed it at Blankenship's stomach or chest. During the course of this encounter, defendant told Blankenship that he was going to kill him or could kill him and threatened to "spray" Blankenship's "football buddies." Defendant also told Blankenship, "Nine millimeter, that's where it's at, babe" and "Tell Bobby, look out. I'm going to get him." Defendant then backed up and left.

Defendant testified that he pulled the gun in self-defense and kept it pointed downward the whole time. He denied making any verbal threats. According to defendant, when Blankenship and Yager saw the gun they backed off and he then walked back to the car.

## DISCUSSION

### WHETHER SECTION 422 IS LIMITED TO CRIMINAL STREET GANG ACTIVITY

Section 422 provides in part:

"Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent

that the statement is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison . . . ." Section 422 is the only statute included under title 11.5, "Terrorist Threats."

As originally enacted, section 422 made it a felony to "willfully threaten[] to commit a crime which will result in death or great bodily injury to another person, with intent to terrorize another or with reckless disregard of the risk of terrorizing another," if such threats cause another person "reasonably to be in sustained fear for his or her[] or their immediate family's safety." To "terrorize" was defined by section 422.5 as " 'creat[ing] a climate of fear and intimidation by means of threats or violent action causing sustained fear for personal safety *in order to achieve social or political goals.*' " (*People* v. *Mirmirani* (1981) 30 Cal.3d 375, 381 [178 Cal.Rptr. 792, 636 P.2d 1130].) Thus, read together, the two statutes penalized only threats made with intent to achieve "social or political goals." (*Id.* at p. 382.) In *Mirmirani,* the Supreme Court found these statutes unconstitutional because the phrase "social or political goals" was unconstitutionally vague. (*Id.* at p. 388.) Sections 422 and 422.5 were repealed in 1987. (Stats. 1987, ch. 828, § 28, p. 2587.)

Section 422 was amended and reenacted in 1988 as part of Senate Bill No. 1555. (Stats. 1988, ch. 1256.) Senate Bill No. 1555 also added the "California Street Terrorism Enforcement and Prevention Act" (STEP Act) to the Penal Code. (§§ 186.20 to 186.27.) The STEP Act criminalizes participation in a street gang and increases punishment for offenses committed in connection with such a gang. (§ 186.22.)

■ Defendant concedes that the "language of section 422 is seemingly clear," i.e., there is no requirement of gang membership in the statute itself. Nevertheless, because the new version of section 422 was enacted along with the STEP Act, defendant contends a requirement of street gang membership must be implied.

■ The fundamental rule of statutory interpretation is to " 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*People* v. *Aston* (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111].) In determining intent, the court looks first to the words themselves. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741

P.2d 154].) "When the language is clear and unambiguous, there is no need for construction." (*Id*. at pp. 1007-1008.) The court will decline to follow the plain meaning of a statute only when to do so would inevitably frustrate the manifest purposes of the legislation as a whole or lead to absurd results. (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].)

■ Since the language of section 422 makes no reference to criminal gang activity, this court can imply such a requirement only if following the plain meaning of the statute and applying it to "any person" would frustrate the legislative purpose or lead to absurd results. As noted above, defendant relies on the inclusion of section 422 in Senate Bill No. 1555 as evidence that the Legislature intended section 422 to apply only to persons involved with criminal street gangs. However, defendant is construing the legislative purpose in enacting these provisions too narrowly.

Prohibiting "any person" from making "terrorist threats" cannot logically be interpreted as frustrating the legislative purpose behind Senate Bill No. 1555. In enacting the STEP Act, the Legislature noted that it is the right of every person "to be secure and protected from fear, intimidation, and physical harm caused by the activities of violent groups *and individuals*." (§ 186.21, italics added.) The fact that the majority of the provisions of Senate Bill No. 1555 targeted criminal gang activity does not impose an implied limit on section 422. Individuals who willfully threaten to commit crimes which will result in death or great bodily injury as set forth in section 422 also present "a clear and present danger to public order and safety." (Cf. § 186.21.)

Defendant's argument that the word "terrorism" as used in the Penal Code is limited to criminal street gangs is a non sequitur. Although criminal street gangs engage in terrorism, being a member of a street gang is not a prerequisite to being held accountable for making "terrorist threats." Any person can engage in the behavior proscribed by section 422.

Further, the organization of the sections within the Penal Code belies defendant's theory. The STEP Act is part of title 7, whereas section 422 is part of title 11.5.

■■■■ The legislative history of Senate Bill No. 1555, which defendant has requested this court to take judicial notice of, does not support defendant's position.[2] Defendant relies on the fact that neither the

---

[2]Judicial notice may properly be taken of legislative history. (*Post* v. *Prati* (1979) 90 Cal.App.3d 626, 634 [153 Cal.Rptr. 511].)

Legislative Counsel's Digest nor the Assembly Committee on Public Safety report states that section 422 was intended to apply to anything other than gang activity. However, these analyses of section 422 do not refer to gang activity at all. Further, the committee report notes that former section 422 was declared unconstitutional by *People* v. *Mirmirani, supra,* 30 Cal.3d 375, and states that Senate Bill No. 1555 was proposed to overcome *Mirmirani.* Since the former statute was not limited to criminal street gang activity, the reenacted statute should also not be so limited in the absence of a declaration to the contrary.

DISPOSITION

The judgment is affirmed.

Stone (W. A.), J., and Dibiaso, J., concurred.