[No. H025922. Sixth Dist. Mar. 30, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY LEE MOORE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, Rule 978, this opinion is certified for partial publication with the exception of the section entitled "III. Section 667.1."

COUNSEL

J. Wilder Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Ryan B. McCarroll, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McADAMS, J.—In this appeal we must decide whether a prior conviction for violation of Penal Code section 422[1] qualifies as a "strike" under the 2000 amendments to the "Three Strikes" law. We find that it does so qualify and we affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1998 and 1999, defendant threatened to kill his former girlfriend and her new boyfriend on numerous occasions. He pleaded guilty to violating section 422. At the time, section 422 was not listed as a serious felony under the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Three Strikes law. Amendments to the Three Strikes law, enacted in 2000 by initiative as part of Proposition 21, added "terrorist threats, in violation of section 422" to the list of serious felonies. (§ 1192.7, subd. (c)(38).)

In 2002, defendant sold drugs to an undercover police officer. He was charged with transportation, sale and distribution of methamphetamine. (Health & Saf. Code § 11379, subd. (a).) His prior conviction for violation of section 422 was charged as a serious felony pursuant to the provisions of the Three Strikes law. (§§ 667.5, subd. (c), 1192.7, subd. (c)(38), 667, subds. (b)–(i), 1170.12.) Defendant pleaded guilty to violating Health and Safety Code section 11379. The prior conviction allegation was tried to the court and found true. Defendant was sentenced to prison for three years on the drug conviction, which term was doubled to six years under the Three Strikes law.

## II. DEFENDANT'S CONTENTIONS

Defendant makes two statutory construction arguments for the invalidation of his prior strike conviction under section 422. First, he argues that only those section 422 convictions postdating the 2000 amendments to the Three Strikes law qualify as strikes. Since his conviction occurred in 1999, before the 2000 amendment that added section 422 to the list of strike offenses under section 1192.7, subdivision (c)(38), it does not qualify as a strike. Second, he contends that only "terrorist threats" in violation of section 422—i.e., threats of violence to intimidate or coerce a government or a community—qualify as strikes. Since his violation of section 422 involved threats to his ex-girlfriend and her new boyfriend, they do not qualify as strikes. For the reasons we discuss. below, we find defendant's arguments unpersuasive.

## III. SECTION 667.1*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## IV. TERRORIST THREATS

Defendant next contends the Three Strikes law does not apply to him because his conviction for violating section 422 was not premised on a "terrorist threat." Proposition 21 amended section 1192.7 by adding "terrorist threats, in violation of Section 422" to the list of crimes considered "serious felonies." (§ 1192.7, subd. (c) (38).) Defendant contends that by using the phrase "terrorist threats" in conjunction with section 422, the Legislature intended to designate as "serious felonies" *only* those criminal threats in

---

*See footnote, *ante*, page 74.

violation of section 422 which could be considered "terrorist." He acknowledges that the term "terrorist" is not defined anywhere in the initiative or, we might add, in section 422.[4] He therefore proposes that we engraft upon the statute the dictionary definition of "terrorist." Under this view, a terrorist threat would be one which threatened the "use of force or violence to intimidate or coerce societies or governments, often for ideological or political reasons." (American Heritage College Dictionary (3d. ed. 1998).) Under this construction of the statute, defendant's conviction would not qualify as a "serious felony" because it arose out of a domestic dispute and not a politically or ideologically motivated one aimed at society as a whole or the government.

We agree with defendant that by using the term "terrorist threat" in conjunction with a statute that no longer uses those words, the drafters of Proposition 21 created an ambiguity that requires us to divine the voters' intent. However, our review of the history and text of both section 422 and Proposition 21 convinces us that no such meaning was intended. We therefore decline to adopt defendant's construction of the statutory language at issue. To do so would violate the voters' intent and lead to absurd results.

## A. General Principles of Statutory Construction

"[T]he fundamental goal of statutory interpretation is to ascertain and carry out the intent of the Legislature." (*People v. Cruz* (1996) 13 Cal.4th 764, 782 [55 Cal.Rptr.2d 117, 919 P.2d 731].) " 'To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent.' [Citation.] 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain

---

[4] Section 422 provides in its entirety: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

"For the purposes of this section, 'immediate family' means any spouse, whether by marriage or not, parent, child, any person related by consanguinity or affinity within the second degree, or any other person who regularly resides in the household, or who, within the prior six months, regularly resided in the household.

" 'Electronic communication device' includes, but is not limited to, telephones, cellular telephones, computers, video recorders, fax machines, or pagers. 'Electronic communication' has the same meaning as the term defined in Subsection 12 of Section 2510 of title 18 of the United States Code."

meaning of the statute governs.' " (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1046–1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].) However, the court will not follow the plain meaning of the statute if to do so "would inevitably frustrate the manifest purposes of the legislation as a whole or lead to absurd results." (*In re Ge M.* (1991) 226 Cal.App.3d 1519, 1523 [277 Cal.Rptr. 554].) On the contrary, "[t]o the extent that uncertainty remains in interpreting statutory language, 'consideration should be given to the consequences that will flow from a particular interpretation' [citation], and both legislative history and the 'wider historical circumstances' of the enactment may be considered. [Citation.] Further, ambiguities are not interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent. [Citation.]" (*People v. Cruz, supra*, 13 Cal.4th at pp. 782–783.) All these same principles apply in interpreting a voter initiative. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900 [135 Cal.Rptr.2d 30, 69 P.3d 951].)

### B. *History of Section 422*

"As originally enacted, section 422 made it a felony to 'willfully threaten [] to commit a crime which will result in death or great bodily injury to another person, with intent to terrorize another or with reckless disregard of the risk of terrorizing another,' if such threats cause another person 'reasonably to be in sustained fear for his or her[] or their immediate family's safety.' To 'terrorize' was defined by section 422.5 as ' "creat[ing] a climate of fear and intimidation by means of threats or violent action causing sustained fear for personal safety *in order to achieve social or political goals*." ' (*People v. Mirmirani* (1981) 30 Cal.3d 375, 381 [178 Cal.Rptr. 792, 636 P.2d 1130].) Thus, read together, the two statutes penalized only threats made with intent to achieve 'social or political goals.' (*Id.* at p. 382.) In *Mirmirani*, the Supreme Court found these statutes unconstitutional because the phrase 'social or political goals' was unconstitutionally vague. (*Id.* at p. 388.) Sections 422 and 422.5 were repealed in 1987. (Stats. 1987, ch. 828, § 28, p. 2587.)" (*In re Ge M., supra*, 226 Cal.App.3d at p. 1522.)

Section 422 was amended and reenacted in 1988 as part of the "California Street Terrorism Enforcement and Prevention Act" (STEP Act). (*People v. Martinez* (1997) 53 Cal.App.4th 1212, 1217 [62 Cal.Rptr.2d 303].) With the exception of minor changes not relevant here, the 1988 statute is the same as the statute that exists today, proscribing "criminal" rather than "terrorist" threats. (See *People v. Toledo* (2001) 26 Cal.4th 221, 228–229 [109 Cal.Rptr.2d 315, 26 P.3d 1051].) As expressed in the STEP Act itself, the Legislature's purpose in enacting the law was to recognize "that it is the right of every person . . . to be *secure and protected from fear, intimidation*, and

physical harm caused by the activities of violent groups and individuals. . . . [¶] The Legislature . . . finds that the State of California is in a state of crisis which has been caused by violent street gangs whose members *threaten, terrorize,* and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities . . . present a clear and present danger to public order and safety. . . ." (§ 186.21, italics added.)

Then as now, section 422 was the only section included in the code under title 11.5. Despite the amendment of the text to reflect its proscription of "criminal threats," the name of title 11.5 remained "Terrorist Threats" until it was amended in 2000, after the passage of Proposition 21, to say "Criminal Threats." (*People v. Toledo, supra,* 26 Cal.4th at p. 224, fn. 1.) Finally, in 2002, the Legislature substituted the word "criminal" for "terrorist" in section 1192.7, subdivision (c)(38). (Stats. 2002, ch. 606, p. 2781.) Now, all the relevant provisions dealing with criminal threats—section 1192.7, subdivision (c)(38), section 422, and title 11.5—use the same terminology.

Given this history, it is not surprising that from 1987 until recently, case law has continued to refer to violations of section 422 as "terrorist threats," even though the body of the statute has not referenced terror, terrorists, terrorism or social or political goals since the statute was found unconstitutional and repealed in 1987. (See e.g., *In re Marcus T.* (2001) 89 Cal.App.4th 468 [107 Cal.Rptr.2d 451]; *People v. Solis* (2001) 90 Cal.App.4th 1002 [109 Cal.Rptr.2d 464]; *People v. Franz* (2001) 88 Cal.App.4th 1426 [106 Cal.Rptr.2d 773]; *In re Ricky T.* (2001) 87 Cal.App.4th 1132 [105 Cal.Rptr.2d 165]; *People v. Lopez* (1999) 74 Cal.App.4th 675 [88 Cal.Rptr.2d 252]; *People v. Melhado* (1998) 60 Cal.App.4th 1529 [70 Cal.Rptr.2d 878]; *People v. Martinez, supra,* 53 Cal.App.4th at p. 1214; *People v. Stanfield* (1995) 32 Cal.App.4th 1152 [38 Cal.Rptr.2d 328]; *In re Ge M., supra,* 226 Cal.App.3d at p. 1520.)

More importantly, we have found nothing in the language of the post-*Mirmirani* versions of the statute, or in the case law, to suggest the Legislature intended that the post-*Mirmirani* statute should be construed as prohibiting speech aimed at achieving social or political goals—the very threats defendant argues the Legislature particularly targeted in section 1192.7, subdivision (c)(38). On the contrary, the Legislature specifically said of the STEP Act, "[i]t is not the intent of this chapter to interfere with the exercise of the constitutionally protected rights of freedom of expression and association." (§ 186.21.) Instead, in the STEP Act the Legislature clearly used the term "terrorize" broadly to describe all threats that inspire fear and intimidation in the citizenry. "*Any* person can engage in the behavior proscribed by section 422." (*In re Ge M., supra,* 226 Cal.App.3d at p. 1523, italics added.) In sum, nothing in the language or history of section 422

suggests that after 1987 the Legislature intended for the term "terrorist" in title 11.5 to impart the political or ideological overtones of the narrow, dictionary meaning of "terrorist" to the body of section 422.

## C. *History of Proposition 21*

Proposition 21 was enacted as an initiative measure on March 7, 2000, and entitled the "Gang Violence and Juvenile Crime Prevention Act of 1998." In *Manduley* our Supreme Court upheld the constitutionality of this initiative measure against the claim that it violated the single-subject rule by including amendments to the Three Strikes law under the rubric ·of juvenile and gang-related crime prevention. We find the court's discussion in this regard instructive and highly germane to our inquiry into the voters' intent in passing Proposition 21. The *Manduley* court found that Proposition 21's revisions of the Three Strikes law bore "a reasonable and commonsense relationship to the initiative's provisions regarding juvenile and gang-related crime. [¶] . . . Proposition 21 added a number of crimes to the list of violent and serious felonies that qualify as strikes under the Three Strikes law. . . . The serious felonies qualifying as strikes under the initiative include exploding a destructive device causing bodily injury; certain felonies committed in connection with a street gang in violation of section 186.22; throwing acid or a flammable substance; assault with a deadly weapon; assault on a peace officer or firefighter; assault with a deadly weapon against a public transit employee, custodial officer, or school employee; discharge of a firearm at an inhabited dwelling, vehicle, or aircraft; rape in concert; shooting from a vehicle; intimidation of victims or witnesses; and terrorist threats. (§ 1192.7, subd. (c), as amended by Prop. 21, § 17.) [¶] . . . [¶] Even if some of the crimes added to the list of violent and serious felonies are *more likely* to be committed by an adult who is not a gang member, the offenses nonetheless constitute crimes that commonly are committed by members of street gangs and/or juvenile offenders and thus bear a reasonable and commonsense relationship to the purpose of the initiative. . . . The circumstance that the Three Strikes provisions affect adults in addition to juveniles and gang members does not mean that these provisions are not reasonably germane to the purpose of the initiative. [¶] Furthermore, certain juveniles in wardship proceedings who are found to have committed violent or serious felonies within the meaning of the Three Strikes law can accumulate strike priors that result in enhanced sentences in future criminal prosecutions. (§ 667, subd. (d)(3).) In addition, adult gang members, as well as juveniles prosecuted in criminal court, who commit such crimes are subject to the increased penalties and other restrictions imposed by the Three Strikes law, such as limitations upon plea negotiation and upon conduct credits. (§§ 1192.7, subd. (a), 2933.1.) These provisions further the initiative's goal of preserving juvenile court resources· for less violent offenders who are more likely to benefit from rehabilitation. . . . [¶] Thus, the list of violent and serious felonies contained

in the Three Strikes law bears both a topical and a functional relationship to provisions regarding juvenile crime. Revising the list of violent and serious felonies to add crimes for which juveniles and gang members can receive increased penalties is reasonably germane to the initiative's general purpose of addressing juvenile and gang-related crime." (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, at pp. 577–578 [117 Cal.Rptr.2d 168, 41 P.3d 3], fn. omitted.)

Like the *Manduley* court, we discern an intent on the part of the voters of this state to *expand* the list of crimes for which juveniles, gang members and incidentally others can serve enhanced punishment. This intent is in accord with the purpose of the Three Strikes law, "which is to 'ensure longer prison sentences and greater punishment' for serious and violent recidivists. (See § 667, subd. (b).)" (*People v. Murillo* (1995) 39 Cal.App.4th 1298 at p. 1308 [46 Cal.Rptr.2d 403].) Nothing in the voter pamphlet, or the Legislative Analyst's analysis, indicates that it was the voters' intent to take such a crabbed view of the term "terrorist" as defendant proposes, particularly in light of the tortured history of section 422. Resolving the ambiguity in defendant's favor on this point would lead to the absurd result that persons convicted of all kinds of criminal threats would escape the strictures of the Three Strikes law, except those to whom, in all likelihood, the statute could not constitutionally be applied. We decline to adopt such an interpretation. "Defendant's arguments to the contrary and reliance on rules of construction that require us to apply the plain meaning of statutory language and resolve ambiguities in favor of the defendant do not persuade us otherwise. Simply put, these rules do not compel adoption of defendant's interpretation where, as here, they would result in absurd consequences, render portions of the statute meaningless, and frustrate the evident purpose of the law." (*People v. Murillo, supra*, 39 Cal.App.4th at p. 1308.)

## CONCLUSION

We reject, as inconsistent with the voters' and the Legislature's intent in passing Proposition 21 and enacting section 422, defendant's statutory constructions of sections 667.1 and 1192.7, subdivision (c)(38), both added by Proposition 21, which would require that only "terrorist threats" aimed at societal or governmental entities could be subject to the Three Strikes law, and then only if such a conviction were suffered after March 8, 2000.

## DISPOSITION

The judgment is affirmed.

Rushing, P. J., and Premo, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 11, 2004.