Filed 10/4/22  P. v. Ortega CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B312874 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA075836) |
| v. | |
| ALFRED FOREST ORTEGA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  William C. Ryan, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Alfred Forest Ortega appeals from the postjudgment order denying his petitions for recall of his sentence and resentencing pursuant to Penal Code sections 1170.126 and 1170.18.[1]  He contends that the trial court abused its discretion in finding him unsuitable for recall and resentencing.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Prior Criminal Proceedings

As a teenager, Ortega ran afoul of the law numerous times. From 1981 to 1983, he racked up sustained charges for, among other things, prowling (§ 647, subd. (h)), burglary (§ 459), trespassing (§ 602.5), and battery (§ 242).

In 1984, at age 17, Ortega was convicted of robbery (§ 211) and causing great bodily injury (§ 12022.7).  In the course of the robbery, he placed a gun to the victim's head and threatened to kill him.  When the victim attempted to get control of the gun, Ortega knocked him to the ground and beat him before fleeing in the victim's car.  Ortega was tried as an adult and sentenced to six years in state prison.

In 1991, Ortega was charged with attempted murder (§ 664), including a gang allegation (§ 186.22).  Ortega and several fellow gang members had surrounded a car driving to a local bar, forcing the car to stop.  Ortega challenged the driver to a fight, then joined his companions in savagely beating him.  The victim saw Ortega "slashing" at his torso.  The victim survived, but had to be treated at the hospital for three gashes on his

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2

abdomen that were each approximately one foot long and deep enough to expose his internal organs. Ortega pled guilty to assault with a deadly weapon (§ 245, subd. (a)(1)) and mayhem (§ 203), including a firearm allegation (§ 12022.5) and a gang allegation (§ 186.22), and was sentenced to 14 years in prison.

In 2005, Ortega's neighbors called the police to report that he had been selling drugs and threatening people in the neighborhood. He was convicted of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and sentenced to three years in prison.

## II. Current Offense

While on probation, Ortega committed the offense underlying this appeal.

"On July 23, 2006, Akshay Shah and his family were at a park when they were approached by [Ortega], who was talking loudly to himself. [Ortega] rifled through a bag owned by Shah's nephew and removed his glasses. Shah confronted [Ortega], who displayed a 10-inch knife, concealed in his left hand, with the blade pointing toward his inner elbow. Shah backed away and told the rest of the family to stay away from [Ortega]. [Ortega] walked about 10 feet away, returned, and put the glasses on the ground next to the bag. Yelling, [Ortega] walked toward the parking lot and kicked a garbage can and sprinklers. Shah called the police. [Ortega] hit his own vehicle with some branches and loitered about the other vehicles. Later, Shah's brother's vehicle was found with a broken rear-windshield wiper blade and bent antenna.

"Los Angeles County Deputy Sheriff Thomas Lines approached [Ortega] and ordered him to stop and put his hands up. [Ortega] ignored his commands, got inside his vehicle,

3

started the engine, and tried to drive off.  Another deputy tasered [Ortega] and recovered two knives.  When [Ortega] was searched at the station, officers found a plastic bag containing methamphetamine in the right front pocket of his pants." (*People v. Ortega* (July 2, 2008, B199516) [nonpub. opn.] at pp. 2–3.)

Ortega was charged with robbery (§ 211), vandalism (§ 594, subd. (a)), resisting arrest (§ 148, subd. (a)(1)), and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)).  These charges included a special allegation that Ortega personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)), and an allegation that he had previously committed a serious or violent felony (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)).  When he was taken into custody for this offense, he also admitted to membership in the Mexican Mafia, a gang commonly referred to as "EME."

A jury convicted Ortega for resisting arrest and possession of methamphetamine, as well as the lesser offense of petty theft (§ 484).  Due to Ortega's prior convictions, the trial court sentenced him to an aggregate term of 25 years to life under California's "Three Strikes" law.  We affirmed the convictions and sentence in 2008.  (*People v. Ortega, supra,* B199516.)

**III.  Petitions for Resentencing**

In 2013, Ortega filed a petition to recall his sentence pursuant to Proposition 36, also known as the Three Strikes Reform Act of 2012 (§ 1170.126), arguing that his third strike felony for possession of methamphetamine was not a serious or violent felony warranting an indeterminate sentence.  The People opposed the petition.

Two years later, Ortega filed a petition for resentencing pursuant to Proposition 47, the Safe Neighborhoods and Schools

4

Act (§ 1170.18), arguing that his third strike felony conviction for possession of methamphetamine should be reduced to a misdemeanor and that he should be resentenced accordingly. Again, the People opposed his petition.

On August 12, 2019, after requesting and receiving multiple extensions of the filing deadline,[2] Ortega submitted a combined reply in support of his petitions. The People responded by withdrawing their earlier oppositions per reform directives issued by the district attorney's office of Los Angeles County.

After an evidentiary hearing, the trial court denied both of Ortega's petitions. In a 17-page order, the trial court found that resentencing him would "pose an unreasonable risk of danger to public safety" under both sections 1170.126, subd. (f) and 1170.18, subd. (b).

The order includes a lengthy analysis of multiple factors relevant to Ortega's suitability for resentencing. The trial court acknowledged that some of these factors weighed in favor of resentencing, but ultimately found that "these factors are outweighed by [Ortega's] criminal history[,] . . . [his] continued misconduct in prison[,] . . . [his] failure to participate in any rehabilitative programming while incarcerated and his unsupportive post-release plans."

In particular, the trial court noted that Ortega's prison disciplinary record contained an investigation which "found [him]

[2] Ortega received approximately 30 time extensions between the filing of the People's first opposition in December 2013 and the filing of Ortega's reply in August 2019. These extensions were granted for a variety of reasons, including to facilitate changes of counsel, to obtain trial transcripts and other materials, and to give Ortega and his counsel time to consult with and review opinions from experts.

guilty of acting in a leadership role in [EME]," including by giving other gang members an order to assault inmates designated as targets of EME. Ortega had also been twice disciplined for unlawful possession of a cell phone, which the trial court noted would have been a "relatively benign" infraction were it not for evidence showing that Ortega used hidden cell phones to direct EME activities. This history raised concerns that Ortega had not learned from his prior mistakes, was unwilling to modify his behavior to comply with the law, and that he would continue to engage in violent and destructive gang-related activity.

Ortega timely appealed.

## DISCUSSION

## I. Applicable Law and Standard of Review

### A. *Section 1170.126*

Section 1170.126 was enacted as part of Proposition 36, which provides a procedure by which some prisoners already serving third strike sentences may seek resentencing in accordance with new sentencing rules. (*People v. Johnson* (2015) 61 Cal.4th 674, 682.) A defendant is only eligible for resentencing if he is serving an indeterminate term of life imprisonment, pursuant to the Three Strikes law, "for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of section 667.5 or subdivision (c) of section 1192.7." (§ 1170.126, subd. (e)(1).)

An inmate is ineligible for resentencing under section 1170.126 if, as relevant here, the trial court determines that resentencing a defendant would pose an unreasonable risk of danger to public safety. (§ 1170.126, subds. (e) & (f).)

6

B. *Section 1170.18*

Proposition 47 redesignates as misdemeanors "certain drug- and theft-related offenses" that were charged or sentenced as felonies. (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108; § 1170.18.) Among other things, Proposition 47 permits persons currently "serving a sentence for a conviction . . . of a felony or felonies who would have been guilty of a misdemeanor . . . had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing . . . ." (§ 1170.18, subd. (a).)

As with section 1170.126, the trial court may deny a petition for resentencing if it determines that a defendant "would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).) However, unlike section 1170.126, section 1170.18 specifically defines "unreasonable risk of danger to public safety" as "an unreasonable risk that [a defendant] will commit a new violent felony" enumerated in subdivision (e)(2)(C)(iv) of section 667. (§ 1170.18, subd. (c).) These felonies are the so-called "super-strike" offenses, such as murder, sexual violence, and crimes carrying a sentence of death or life imprisonment without the possibility of parole. (§ 667, subd. (e)(2)(C)(iv).)

C. *Standard of Review*

"The determination whether a defendant poses an unreasonable risk of danger to public safety is discretionary (§ 1170.126, subd. (f) [see also § 1170.18, subd. (b)]), and . . . '[t]he facts upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence . . . and are themselves subject to [appellate] review for

substantial evidence.'" (*People v. Frierson* (2017) 4 Cal.5th 225, 239.)

It is the defendant's burden on appeal "'to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination . . . will not be set aside on review.'" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977–978 (*Alvarez*).)  "'[A] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citation.]'"  (*Id.* at p. 978.)

In general, a ruling is not arbitrary and capricious if it "is based upon an 'individualized consideration of the offense, the offender, and the public interest.'"  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

## II.  Analysis

### A.  *The trial court did not abuse its discretion*

Ortega argues that the trial court abused its discretion in finding that he currently posed a serious risk of danger to public safety.  He faults the court for failing to conduct an individualized inquiry by examining all the circumstances of the crime, including mitigating factors.

But that is just what the trial court did.  It exhaustively analyzed all circumstances relevant to Ortega's suitability for resentencing, including his criminal history, his prison disciplinary record, his participation in rehabilitative services, his age, his classification score, and whether he had created a realistic plan for release if paroled.

At several points in its analysis, the trial court acknowledged the presence of mitigating factors, such as the temporal remoteness of Ortega's crimes, the lack of any violent acts in his prison record, and his advanced age and low classification score. However, the trial court also noted several aggravating factors, commenting on the seriousness of Ortega's crimes, his leadership role in a prison gang, his apparent willingness to flout the prison's rules to facilitate gang activity, and the infeasibility of his purported plan for release.

In weighing these factors, the trial court stated that it "d[id] not undertake this balance lightly," but ultimately concluded that "the totality of the record, including consideration of all statutory factors, demonstrates that resentencing" Ortega would unreasonably endanger public safety.

This careful, evenhanded analysis does not constitute a reversible abuse of discretion.

B. *Ortega's counterarguments*

Ortega raises three basic arguments in an attempt to convince us otherwise. These arguments are unpersuasive.

1. <u>*Trial court's reliance on Ortega's criminal history*</u>

Ortega challenges the trial court's reliance on his criminal history. He argues that the trial court could not have found a nexus between his past crimes and his future risk of committing super-strike offenses, as required to discretionarily deny resentencing under section 1170.18, because his criminal history shows that he had never committed a super-strike offense.

This argument does not hold water. A single prior conviction for a super-strike offense automatically renders a defendant ineligible for resentencing. (§ 1170.18, subd. (i).) If Ortega's convictions for lesser offenses could not provide the trial

9

court with insight into whether he posed a current risk to public safety, his criminal history would add little value to the discretionary determination of his eligibility for resentencing. Yet section 1170.18 explicitly prompts trial courts to consider a defendant's criminal history in detail when making this determination. (§ 1170.18, subd. (b)(1).) We decline to accept any arguments that would "'render portions of the statute meaningless [or] frustrate the evident purpose of the law.'" (*People v. Moore* (2004) 118 Cal.App.4th 74, 81.)

Ortega also contends that the trial court placed undue weight on his criminal history despite the immutability and remoteness in time of those offenses. This ignores that the trial court considered both the immutable nature of Ortega's criminal history and the remoteness of his offenses in its analysis of his eligibility for resentencing. And, in any event, the remoteness of Ortega's crimes was significantly tempered by the fact he has been all but consistently incarcerated since his first conviction as an adult in 1984. (Cf. *People v. Loy* (2011) 52 Cal.4th 46, 62 [prior crimes were not remote for purposes of Evid. Code, § 352 where defendant had been in prison a significant portion of the intervening time and thus had little opportunity to commit additional crimes]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 315 ["[i]n deciding a defendant's 'prospects' for committing future crimes, the sentence imposed by the trial court is itself a factor, since the defendant presumably will have fewer opportunities to commit crime while in prison"].)

2. *Credibility of evidence regarding Ortega's gang activity in prison*

Ortega argues that the trial court relied on evidence of "dubious reliability" in evaluating his alleged gang activity while

in prison. He alleges that the investigation was based on information obtained from confidential informants who may not have been reliable sources.[3]

We note that Ortega did not object to the trial court's reliance on either the conclusions reached by the gang investigations or the specific confidential information disclosure forms summarizing information given, which forfeits any contention regarding their use. (Evid. Code, § 353, subd. (a); see *People v. Holford* (2012) 203 Cal.App.4th 155, 168–169.)

But even if Ortega had not forfeited this argument by failing to object below, the limited information provided in the record demonstrates that these documents are sufficiently reliable for the purposes of resentencing.

We have held that, in the context of resentencing, a court may rely on any ""relevant, reliable, admissible portions of the record of conviction to determine the existence or nonexistence of disqualifying factors." [Citations.]" (*People v. Thomas* (2019) 39 Cal.App.5th 930, 935.) The reliability of information provided by confidential informants is established by the presence of any of the enumerated indicia of reliability codified in section 3321 of title 15 of the California Code of Regulations. Each of the confidential information disclosure forms filed in connection with the investigation into Ortega's gang activities includes a reliability determination personally made by the investigating

---

[3]     The only case Ortega cites in support of this argument is our Supreme Court's opinion in *People v. Zermeno* (1999) 21 Cal.4th 927. That case discusses the sufficiency of evidence proffered to prove a defendant's involvement in gang activity, but does not address any issues related to the reliability of that evidence or the credibility of its sources. (*Id.* at pp. 930–931.) We fail to see what relevance this case has to Ortega's argument.

11

officer attesting to the presence of one or more of these indicia. As relevant here, the investigating officers confirmed that the information provided by these informants was self-incriminating, and thus inherently reliable (§ 3321, subd. (c)(3)), that multiple confidential informants independently provided the same information about Ortega's activities (§ 3321, subd. (c)(2)), and that part of the information provided by the informants had been corroborated through investigation or information provided by nonconfidential sources (§ 3321, subd. (c)(4)).

We cannot review the confidential memoranda summarized by these confidential information disclosure forms, and thus cannot confirm whether these reliability determinations are supported by substantial evidence (see *In re Jackson* (1987) 43 Cal.3d 501, 516), as the confidential memoranda have not been made part of the record on appeal. "Of course, 'the defendant . . . bears the burden to provide a record on appeal which affirmatively shows that there was error below, and any uncertainty in the record must be resolved against the defendant.' [Citation.]" (*People v. Moore* (2021) 68 Cal.App.5th 856, 866.)

Therefore, we conclude that the evidence of Ortega's prison gang activity was sufficiently reliable for the trial court to rely on it in denying his petitions for resentencing.

### 3. *Other mitigating factors*

Lastly, Ortega notes several additional factors that could have reasonably led the trial court to a different conclusion: the role of Ortega's youth in his early criminal endeavors, his attempts to engage in rehabilitative services and come up with some components of a supportive living environment in the event of his release. But as stated above, we cannot reverse the trial

12

court's decision just because "'reasonable people might disagree'" about the relative strength of these factors.  (*Alvarez, supra,* 14 Cal.4th at p. 978.)

## DISPOSITION

The order denying Ortega's petitions for resentencing is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                   ASHMANN-GERST


We concur:


_____, P. J.
      LUI


_____, J.
            CHAVEZ