[No. B146114. Second Dist., Div. Four. May 24, 2001.]

In re MARCUS T., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MARCUS T., Defendant and Appellant.

**COUNSEL**

Harvey L. Goldhammer, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Catherine T. Okawa, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HASTINGS, J.**—Appellant Marcus T. appeals from judgment of the juvenile court declaring him a ward of the court pursuant to Welfare and Institutions Code section 602 and placing him home on probation after finding that he threatened a public officer in violation of Penal Code section 71[1] and made a terrorist threat in violation of Penal Code section 422.[2] He contends the court erred in finding he committed both crimes because the terrorist threat under section 422 was a lesser and necessarily included crime of the threat against a public officer under section 71. For reasons explained in this opinion, we reject this contention.

We conclude, however, that the opposite is true, i.e., that the threat against the public officer in violation of Penal Code section 71 was, on the facts of this case, a lesser and necessarily included crime of the terrorist threat in violation of Penal Code section 422. Because the law governing lesser included crimes is technical, our analysis is necessarily so. But it is the path to the legally accurate finding that appellant committed one, not two, felonies in this matter. Therefore, after review we remand for further proceedings in accord with this opinion.

### FACTUAL SUMMARY

The evidence, briefly stated in the light most favorable to the judgment, proved that on June 6, 2000, at approximately 10:00 a.m., Nathaniel Brown,

---

[1]Penal Code section 71 provides, in relevant part: "Every person who, with intent to cause, attempts to cause, or causes, any officer or employee of any public or private educational institution . . . to do, or refrain from doing, any act in the performance of his duties, by means of a threat, directly communicated to such person, to inflict an unlawful injury upon any person or property, and it reasonably appears to the recipient of the threat that such threat could be carried out, is guilty of a public offense."

[2]Penal Code section 422 provides, in relevant part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

a uniformed officer for the Pasadena Unified School District, saw appellant smoking by the basketball court at Rose City High School. He asked appellant what he was doing smoking on campus. Appellant replied, "What do you mean, Homie? I can do what the fuck I want to do." Mr. Brown patted appellant down, put him in a wrist lock, and walked him toward the dean's office. Appellant pulled away, clenched his fists and said, "Blood, nobody grabs me like that. Nigger, I am from P.D.L. and I will fuck you up. . . . I will take you out." Mr. Brown was "alarmed." He understood "P.D.L." to refer to a Blood gang known as Pasadena Denver Lane. He feared appellant was going to punch him. Mr. Brown grabbed appellant and "tossed" him to the ground. With his weight on appellant, Mr. Brown handcuffed him.

DISCUSSION

I

■ Where two crimes are based upon the commission of the same act, and one is a lesser and necessarily included offense of the other, the perpetrator may not be found guilty of both. (*People v. Sanchez* (2001) 24 Cal.4th 983, 987 [103 Cal.Rptr.2d 698, 16 P.3d 118]; *In re Jose M.* (1994) 21 Cal.App.4th 1470, 1476 [27 Cal.Rptr.2d 55].) ■ Appellant contends this rule applies in this case because the crime of terrorist threats in violation of Penal Code section 422 is a lesser and necessarily included crime of threatening a public officer in violation of Penal Code section 71.

"The definition of a lesser necessarily included offense is technical and relatively clear. ■ Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]" (*People v. Birks* (1998) 19 Cal.4th 108, 117 [77 Cal.Rptr.2d 848, 960 P.2d 1073]; *People v. Sanchez, supra,* 24 Cal.4th at p. 988.) Under these tests, appellant's contention fails.

■ Although Penal Code section 71 and Penal Code section 422 are worded differently, each crime has four primary ingredients: a criminal intent, a victim, a threat, and a reaction by the victim. A comparison of two of these elements is informative. The victim of a terrorist threat in violation of section 422 may be any person, whereas the victim of a Penal Code section 71 violation must be a particular person, i.e., "any officer or employee of any public or private educational institution or any public officer or employee." (Pen. Code, § 71.) A terrorist threat must cause the victim

"reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety." (Pen. Code, § 422.) By contrast, the threat criminalized by section 71 need not generate fear, sustained or otherwise. All that is required is that the victim perceive it reasonably possible that the threat will be carried out.

This comparison demonstrates that, under the elements test, a terrorist threat in violation of Penal Code section 422 is not a lesser and necessarily included crime of threatening a public officer in violation of Penal Code section 17 because the former can be committed without also committing the latter. Since the petition filed in this case alleged, in statutory language, the different victim reactions to the alleged threat, the accusatory pleading test leads to the same conclusion.

Accordingly we reject appellant's contention that the crime of terrorist threats in violation of Penal Code section 422 is a lesser included offense of the crime of threatening a public officer in violation of Penal Code section 71.

## II

Pursuant to Government Code section 68081, we posed the reverse issue, asking the parties whether, under the accusatory pleadings test, appellant's threatening of a public officer in violation of Penal Code section 71 is a lesser included offense of his terrorist threat in violation of Penal Code section 422.

Respondent argues that it is not because the Penal Code section 71 violation requires an intent to influence the performance of an officer's official duties, and no such intent was alleged as to the terrorist threat. This argument begs the question. The issue is not whether the pleading used the same language to describe the two crimes. It is whether the accusatory pleading described the offenses in such a way that if committed as specified, the criminal conduct prohibited by Penal Code section 422 encompassed the criminal conduct prohibited by section 71. (*People v. Lopez* (1998) 19 Cal.4th 282, 290 [79 Cal.Rptr.2d 195, 965 P.2d 713].)

Breaking the two crimes down into the primary components we have previously identified, three of the four elements of Penal Code section 71 are clearly encompassed within and exceeded by the corresponding elements of Penal Code section 422. They are the victim, the criminal intent, and the victim's reaction.

The victim of the alleged Penal Code section 71 violation was "Nathaniel Brown, school police officer." The alleged victim of the Penal Code section

422 violation was Nathaniel Brown. It is theoretically possible that appellant might have threatened two different Nathaniel Browns, one a school police officer and the other not a school police officer. But this remote possibility is rendered unreasonable when the date of the two crimes is taken into consideration, since both were alleged to have been committed on June 6, 2000. Thus it appears from the face of the petition that the victim of both crimes was the same person, identified in his narrower role as an "officer . . . of any public or private educational institution" within the meaning of section 71 and in his broader role as "another person" within the meaning of section 422.

The criminal intent alleged pursuant to Penal Code section 71 was the intent to "cause and attempt to cause [the victim] to do, and refrain from doing, an act in the performance of duty." The criminal intent alleged pursuant to Penal Code section 422 was "the specific intent that the statement be taken as a threat." ■ The essence of a threat is a "declaration of hostile determination or of loss, pain, punishment, or damage to be inflicted in retribution for or conditionally upon some course." (Oxford English Dict. (2d ed. CD-ROM 1994).) ■ Thus, the intent alleged to violate section 422, directed as it was in this case toward a public officer, encompassed the intent alleged to violate section 71.

As to the victim's reaction, the Penal Code section 71 charge alleged that "it reasonably appeared to the recipient of the threat that such threat could be carried out." The Penal Code section 422 charge alleged that the threat "convey[ed] to Nathaniel Brown a gravity of purpose and an immediate prospect of execution" and that "Nathaniel Brown was reasonably in sustained fear of his/her safety and the safety of his/her immediate family." The more severe and intense reaction alleged pursuant to section 422 encompassed and exceeded the much lower level reaction alleged to violate section 71.

The only element of Penal Code section 71, as alleged in this case, not encompassed by Penal Code section 422 allegation was the threat itself. The threat alleged pursuant to section 71 was "to inflict an unlawful injury upon the person *and property*" of victim "Nathaniel Brown, school police officer." The threat alleged pursuant to section 422 was the "unequivocal, unconditional, immediate and specific" threat "to commit a crime which would result in death and great bodily injury to Nathaniel Brown." To the extent that the allegations of the two crimes focused on personal injury, the section 422 threat encompassed and exceeded the section 71 threat. But no threat to property was alleged under section 422. Except for this distinction, the terrorist threat upon victim Nathaniel Brown alleged pursuant to Penal Code

section 422 could not be committed without also threatening victim Nathaniel Brown, a public officer as alleged pursuant to Penal Code section 71.

The People made no attempt to prove that appellant threatened to injure the victim's property. But California's technical approach to lesser included crimes analysis does not include consideration of the evidence, as some states do. (See *People v. Birks, supra,* 19 Cal.4th at p. 133, fn. 7.) Thus, the question is whether appellant should be found to have committed two felonies, rather than one, simply because the People alleged, but did not prove, that he threatened to injure the victim's property. We asked the parties, pursuant to Government Code section 68081, whether it would be appropriate, under these circumstances to remand to the juvenile court with directions to amend the petition to conform to proof by striking the words "and property" from the petition.

Respondent acknowledges that the trial court had the power to do so on its own motion at the time of the adjudication hearing. Respondent also acknowledges that the relevant statutory language is in the disjunctive, prohibiting a threat "to inflict an unlawful injury upon any person or property." (Pen. Code, § 71.) Respondent nonetheless argues the petition should not be amended at this point in the proceedings since appellant no longer needs sufficient notice of the charge to prepare his defense and there is no defect or insufficiency in the petition.

Appellant counters that an accusatory pleading in a juvenile case may be amended at any stage of the proceedings. In support of this argument he cites *In re Man J.* (1983) 149 Cal.App.3d 475 [197 Cal.Rptr. 20], which held that "the juvenile court has discretion to permit amendment of a juvenile court wardship petition to correct or make more specific the factual allegations supportive of the offense charged when the very nature of the charge remains unchanged." (*Id.* at p. 481.) *In re Man J.* is distinguishable from the case before us because it involved a People's request to amend a petition filed against a minor. But we perceive no reason why its holding should not be applied in this case. The result will be the deletion of the unproved allegation concerning threat to property. And the amended petition will support the legally accurate finding that appellant committed one, not two, felonies.

It is clear from the record that the juvenile court would have welcomed a suggestion as to how to accomplish this end. During a discussion of whether one crime was a lesser included crime of the other, the court stated: "[T]he problem is under Prop 21 if you have two felonies and a third felony, any felony, they can seek to have this case tried in the adult court. It is unclear

to me whether these count as two felonies." Defense counsel stated that she did not believe so. The court replied, "I hope you are right because that would not be fair. . . . Technically, he has two felonies on his record . . . I hope that is not the case."

Under these circumstances, we conclude it is proper to remand to allow the juvenile court to exercise its discretion to amend the complaint to conform to proof and, thereafter, to strike the finding that appellant violated Penal Code section 71. For guidance of the court on remand, we point out that the record must "contain a statement explaining the reason for the amendment." (Pen. Code, § 1192.6.)

### DISPOSITION

For the foregoing reasons, the matter is remanded to the juvenile court for further proceedings in accord with this opinion.

Epstein, Acting P. J., and Curry, J., concurred.