[No. C043505. Third Dist. July 27, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS ALLEN SCHNATHORST, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through IV, inclusive, of the DISCUSSION.

## COUNSEL

Richard D. Miggins under appointment by the Court of Appeal for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, John G. McLean and R. Todd Marshall, Deputy Attorneys General for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—A jury convicted defendant Douglas Allen Schnathorst of assault with a deadly weapon upon a peace officer (Pen. Code, § 245, subd. (c); count 1; undesignated statutory references are to the Penal Code), theft of an emergency vehicle (Veh. Code, § 10851, subd. (b); count 3), resisting an executive officer by threat, force or violence (§ 69; count 5), threatening to commit a crime resulting in death or great bodily injury (§ 422; count 6), misdemeanor elder abuse (§ 368, subd. (c); count 7), misdemeanor battery on a peace officer (§ 243, subd. (b); count 10), exhibiting a weapon against a peace officer with intent to resist arrest (§ 417.8; count 12), and misdemeanor

vandalism (§ 594, subds. (a), (b)(2)(A); count 13).[1] He was sentenced to state prison for five years eight months, and to county jail for 180 days with 180 days of presentence credit.

■ On appeal, defendant contends (1) his count 6 conviction must be reversed because section 422 does not criminalize threats made to a peace officer, (2) the evidence on count 6 was insufficient, (3) counts 3, 5, and 12 must be stayed pursuant to section 654, and (4) the jail term on count 13 must run concurrently with the prison sentence, thus entitling him to 180 days of presentence credit. In the published portion of the opinion, we conclude that section 422 criminalizes threats against a police officer. In the unpublished portion, we reject defendant's other contentions, except that we conclude defendant's sentence on count 5 must be stayed pursuant to section 654. We shall therefore modify the judgment by staying the sentence on count 5 pursuant to section 654. We shall then affirm the judgment as modified.

## FACTS

*Prosecution Case-in-chief*

Defendant is the youngest child of William and Rosemarie Schnathorst.[2] He resided in their home off and on for 10 years. Defendant and Rosemarie had arguments because he would violate house rules. The Schnathorsts wanted defendant to move out because he did not obey their rules and it was time for him to move on.

On March 31, 2002, Rosemarie arose early to begin preparing a family dinner in honor of defendant's 41st birthday. Defendant became upset because Rosemarie did not want him to eat some food she had prepared for her six-year-old grandson. Defendant was ranting and raving about the food, and William became involved in the argument. Defendant said, "I've got heat," and made reference to a hostage situation. In response, William telephoned 911. Shortly thereafter, Rosemarie tried to use a telephone but defendant took the receiver from her hand and pulled out the wire.

Davis Police Officer Matt Franti was the first officer on the scene. As Franti stepped out of his patrol car, he saw defendant running toward him at full speed. Defendant had an object in his hand and was yelling, "I will kill you, you fucking nigger. I will kill you." (Count 6.) Franti got back into his car,

---

[1] Defendant was acquitted of carjacking (§ 215, subd. (a); count 2), second degree robbery (§§ 211, 212.5, subd. (c); count 4), and removing or injuring a telegraph, telephone, cable television or electrical line (§ 591; count 9). The trial court dismissed charges of elder abuse (§ 368, subd. (c); count 8) and exhibiting a deadly weapon (§ 417, subd. (a)(1); count 11).

[2] For clarity, we shall refer to defendant's parents by their first names.

closed the door and drove forward, correctly perceiving that defendant would throw the object at the car. The object, identified by Rosemarie as a soft drink container, struck the patrol car between the front and rear doors. Defendant chased Franti as he drove away.

Officer Franti parked his patrol car a few houses away from the Schnathorst residence. He stepped out and told defendant to calm down. Defendant climbed into his own car, got back out and assumed a crouching stance, holding an object that he pointed in Franti's direction. Franti feared for his safety because he was worried that defendant had a gun. Eventually, defendant popped up out of the crouching stance, turned around, and walked in the opposite direction. William testified that defendant used the object, described as a "flexible car part," to break several windows in the Schnathorst residence. (Count 13.)

Davis Police Officer Gary Chudamelka responded to the disturbance and saw defendant brandishing a metal object in a threatening manner. (Count 12.) Defendant charged at Chudamelka's patrol car, yelling racial epithets and threatening to kill Chudamelka. (Count 5.) Chudamelka alit from his car and yelled, "Davis Police, you are under arrest. Get down on the ground. Stop. Police."

Officer Chudamelka trained his weapon and pepper spray on defendant. Defendant ran back toward his parents, and Chudamelka gave chase. At that point, defendant hit his father with the metal object. (Count 7.) Then defendant ran at Chudamelka again, carrying the object and saying that he was going to kill him. (Count 1.) Defendant threw the metal object at Chudamelka, striking his head and causing a cut above his left eye. (Count 10.) Chudamelka responded by spraying defendant with pepper spray.

Defendant dove into Officer Chudamelka's patrol car and sped away. (Count 3.) As defendant left, Chudamelka was able to shoot holes in two of the car's tires. Chudamelka was concerned because a fully loaded shotgun was in the car.

Yolo County Sheriff's Deputy Rafael Vicente was driving southbound on Highway 113 when he noticed defendant in Officer Chudamelka's patrol car. Although he was off duty, Vicente followed the patrol car to a point south of Davis where defendant abandoned the car. Vicente took defendant to the ground, identified himself as a deputy, and repeatedly told him to stop resisting. Defendant kept kicking his legs and swinging his arms.

University of California Police Officer Rolland Bryant responded to Deputy Vicente's location and took defendant into custody. Defendant continued to flail about and resist while he was being handcuffed. He said, "Let me

go, you assholes. You are all going to die, as soon as I get a chance, I'm going to murder you bastards." On the way to the hospital, defendant said that he stole a police car for his birthday. Defendant also said, "I was trashing the house and they shot at me, so I took the car and left. My attorney is going to get you guys again, just like last time. He always gets me out of this kind of shit." After arriving at the hospital, defendant continued, "I'm sorry for all the trouble I caused, but I'm a member of the clan [*sic*] and we handle our business, so I'm going to get your car next time. I'm going to make sure you are unconscious, kick your nigger ass, you nigger." Defendant also made further references to stealing a police car for his birthday.

Later, Officer Franti saw defendant at the hospital. Defendant called Franti a "nigger" and repeated his comments about stealing a police car for his birthday.

A search of defendant's bedroom, car, and garage revealed nine hypodermic needles and two glass smoking pipes.

*Defense*

Defendant testified on his own behalf. He acknowledged that for three days preceding his arrest, he had used large quantities of methamphetamine and cocaine and had not slept at all.

Defendant admitted that he argued with Rosemarie about food and that his father telephoned the police. He claimed that it was she, not he, who pulled the cord out of the telephone handset.

Defendant admitted confronting Officer Franti and throwing a soda at him after he tried to hit defendant with the patrol car. Defendant admitted making racial slurs toward Franti and threatening to kill Franti. However, defendant had no weapon and had no ability or intention of carrying out the threat. Defendant claimed he took a crouching stance and acted as if he had a gun in order to get Franti out of the immediate area. When Franti saw him leaning into his car, he was putting a syringe into the back seat.

Defendant admitted breaking windows in his parents' house. He was mad because the police had been called.

Defendant also admitted that he ran toward Officer Chudamelka and used racial slurs. He admitted throwing an object, identified as a speedometer cable, at the officer but he claimed that it missed him. Defendant claimed he jumped into the patrol car because the officer was shooting at him, and he drove away because he was in fear for his life.

Defendant admitted that he resisted Deputy Vicente. He did so because he was in fear for his life.

Defendant admitted making racial slurs at the hospital, and claimed he was only responding to threats the officers made to him.

## DISCUSSION

### I

Defendant contends his count 6 conviction for making a criminal threat must be reversed because section 422, which applies to threats made against "another person," does not extend to threats made against a police officer.[3] He claims the phrase is ambiguous and must be construed in light of its legislative history and the objects to be achieved. In particular, he relies on section 186.21, which declares that the Street Terrorism Enforcement and Protection Act of 1988, of which section 422 is a part, was directed at "violent street gangs whose members *threaten, terrorize*, and commit a multitude of crimes against *the peaceful citizens of their neighborhoods*." (§ 186.21; italics added.) Thus, he claims section 422 protects "the local citizenry, . . . not police officers," and the trial court lacked jurisdiction over him with respect to count 6. The claim has no merit.

"Our role in construing a statute is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning and construing them in context. [Citation.] If the plain language of the statute is clear and unambiguous, our inquiry ends, and we need not embark on judicial construction. [Citations.] If the statutory language contains no ambiguity, the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs. [Citations.]" (*People v. Johnson* (2002) 28 Cal.4th 240, 244 [121 Cal.Rptr.2d 197, 47 P.3d 1064].)

■ There is nothing unclear or ambiguous about section 422's reference to threats of crimes that "will result in death or great bodily injury to another

---

[3] Section 422 provides in relevant part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

person." (Fn. 3, *ante.*) Thus, judicial construction is not necessary. (*People v. Johnson, supra,* 28 Cal.4th 240, 244.)

█ The fact that some crimes can be committed *only* against peace officers (e.g., § 69), and other crimes are punished *more severely* when committed against peace officers (e.g., § 243, subd. (b)), does not mean that peace officers are excluded from the protection of laws that apply to persons generally. (See *In re Marcus T.* (2001) 89 Cal.App.4th 468, 473 [107 Cal.Rptr.2d 451] [juvenile petition identified victim school police officer as " 'officer . . . of any public or private educational institution' " for purposes of section 71 allegation and as " 'another person' " for purposes of section 422 allegation].) █ Officer Franti and Officer Chudamelka were entitled to the protection of section 422. Defendant was properly convicted of making a criminal threat to a peace officer.

## II–IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is modified to stay sentence on count 5 pursuant to Penal Code section 654. As so modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections.

Scotland, P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 13, 2004.

---

*See footnote, *ante*, page 1310.