Filed 5/28/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re B.J., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B293545 (Super. Ct. No. YJ38738) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>B.J.,<br><br>    Defendant and Appellant. | |

What happens if a juvenile court sustains allegations that a minor committed a series of offenses, some of which render them eligible for Division of Juvenile Justice (DJJ) commitment and some of which do not? Welfare and Institutions Code section 733, subdivision (c), is clear: DJJ commitment is permitted only if the minor's most recent offense is listed in Penal Code[1] section 290.008, subdivision (c), or Welfare and Institutions Code section

---

[1] Further undesignated statutory references are to the Penal Code.

707, subdivision (b). (See also *In re D.B.* (2014) 58 Cal.4th 941, 947.) Because the latest offense B.J. committed is listed in neither statute, we vacate the commitment order.

Prosecutors alleged that B.J. committed kidnapping during the commission of a carjacking (§ 209.5, subd. (a); count 1), kidnapping to commit robbery (§ 209, subd. (b)(1); count 2), carjacking (§ 215, subd. (a); count 3), second degree robbery (§§ 211, 212.5, subd. (c); count 4), and unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a); count 5) one evening in September 2017. In the same petition, prosecutors also alleged that B.J. restricted or obstructed a peace officer (§ 148, subd. (a)(1); count 7) later that night. The juvenile court sustained the allegations, and found true allegations that B.J. committed counts 1 through 5 for the benefit of a criminal street gang (§ 186.22, subds. (b)(1)(A), (b)(1)(C) & (b)(4)) and that a principal personally used a firearm during the commission of counts 1 through 4 (§ 12022.53, subds. (b) & (e)(1)). The court deemed counts 1 through 5 felonies; count 7, a misdemeanor. It declared B.J. a ward of the court, and ordered him committed to DJJ for a maximum term of life plus 21 years four months.

B.J. contends: (1) insufficient evidence supports the juvenile court's true findings on the gang allegations, (2) the true finding on count 3 should be reversed, and (3) the court erred when it ordered him committed to DJJ. We reverse the court's finding on count 3, vacate the commitment order, and remand for a new dispositional hearing.

FACTUAL AND PROCEDURAL HISTORY

*The kidnapping, carjacking, and burglary crimes*

In September 2017, K.I. drove her friend's black Audi to El Segundo. Around 7:00 p.m., K.I. parked and started to get

out of the car.  A man pointed a gun at her and told her to get back inside.  As she moved to the front passenger seat, the man demanded all of her possessions.

The driver picked up B.J., then age 15, about 20 yards down the street.  B.J. told the driver, "We need to hurry, let's go, dead bodies, my nigga, dead bodies."  He pointed a gun at K.I. and demanded her cell phone.  He looked through the contents of the phone and said, "Oh, you look good too.  This is going to be fun."  He touched K.I.'s stomach, and the driver touched her breast.  K.I. thought the two were going to rape her.

The driver stopped the Audi again and picked up another passenger.  K.I. begged to be let out of the car.  The driver stopped, threw K.I.'s purse at her, and told her to go.  K.I. got out and asked B.J. for her cell phone.  He refused to return it.  K.I. ran down the street and called police.

*The resisting arrest offense*

About four hours later, Los Angeles Police Officer Leovardo Guillen saw a black Audi run a stop sign.  Officer Guillen activated his overhead lights and followed the car.  The Audi sped away, but stopped after a few blocks.  B.J. got out and ran.  Officer Guillen chased and detained him.  B.J. had socks on his hands and K.I.'s cell phone in his pocket.

*Gang evidence*

During booking, B.J. told Officer Guillen that he was a member of the Rollin 90s gang and that his moniker was "Ken Dog."  At the contested adjudication, Officer Guillen testified that gang members sometimes wear socks on their hands to avoid leaving fingerprints while loading a firearm or stealing vehicles.

Detective Jesus Flores testified that, during the investigation of a 2016 carjacking, B.J. admitted that he was a

3

member of the Rollin 90s gang with the moniker "Tiny Ken Dog." B.J. committed that crime with three other people, including another Rollin 90s gang member and a Rollin 40s gang member.

Detective Don Sasaki testified that B.J. told him that he was a Rollin 90s gang member with a moniker of "Tiny Nine Bang" in February 2017.

Officer Robert Resurreccion testified that the Rollin 90s gang is a clique of the Neighborhood Crips street gang, together with the Rollin 30s, 40s, 50s, 60s, and 100s. The Rollin 90s gang's primary activities include vandalism, burglaries, robberies, carjackings, and firearms possession. Carjacking a "high-end car" like an Audi allows a gang member to show off the vehicle and gain respect from fellow gang members. It also allows them to drive to rival gang territory and commit additional crimes. The proceeds from these crimes benefit the gang financially and permit them to buy firearms or narcotics.

Officer Resurreccion said that the carjacking in this case was committed in Rollin 40s gang territory. It occurred on "Hood Day," a day of celebration for the Rollin 90s. Younger gang members often commit crimes on Hood Day to demonstrate their respect for and loyalty to the gang and to establish themselves as members.

Officer Resurreccion believed that B.J. was an active Rollin 90s gang member based on his prior admissions, prior crimes, and gang tattoos. He did not know whether B.J.'s accomplices in the carjacking were gang members.

Given a hypothetical scenario based on the facts of this case, Officer Resurreccion opined that the hypothetical gang member would have committed the crimes for the benefit of, at the direction of, and in association with the Rollin 90s street

4

gang:  It was the gang's Hood Day, the stolen car benefitted the gang financially, and it increased the gang member's prestige within the gang.  That the gang member may have committed the crimes with non-gang members did not change the officer's opinion since it was possible the non-gang members were attempting to "work their way into the gang."

*DJJ commitment*

The juvenile court ordered B.J. committed to DJJ for a maximum term of life plus 21 years four months:  a lifetime commitment on count 1, plus a consecutive 10 years on the attached gang enhancement, plus a consecutive 10 years on the firearm enhancement; a consecutive one year on count 4; and a consecutive four months on count 7.  Pursuant to section 654, the court imposed and stayed the commitments on all remaining counts.

DISCUSSION

*Gang allegations*

To sustain a gang allegation, the juvenile court must conclude that:  (1) the minor's offense was gang related, or was committed "for the benefit of, at the direction of, or in association with" the gang, and (2) the minor had "'the specific intent to promote, further, or assist in any criminal conduct by gang members.'"  (*People v. Albillar* (2010) 51 Cal.4th 47, 60, 65; see § 186.22, subd. (b)(1).)  B.J. contends there was insufficient evidence of the first of these requirements.  We disagree.

When evaluating a challenge to the sufficiency of the evidence, our review is limited to determining whether substantial evidence—"evidence that is reasonable, credible, and of solid value"—supports the juvenile court's findings.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  We view the evidence "in

5

the light most favorable to the prosecution and presume in support of the [findings] the existence of every fact the [court] could reasonably have deduced from the evidence." (*Ibid.*) "'Conflicts and even testimony that is subject to justifiable suspicion do not justify the reversal of a [finding], for it is the exclusive province of the [court] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'" (*Ibid.*) Reversal "'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the [court's findings]. [Citation.]" (*Ibid.*)

"'Expert opinion that particular criminal conduct benefited a gang' . . . can be sufficient to support [a] gang enhancement." (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.) Here, Officer Resurreccion opined that a gang member like B.J. would have committed his crimes for the benefit of the Rollin 90s gang. The evidence supports that opinion.

Detective Flores, Detective Sasaki, Officer Guillen, and Officer Resurreccion all testified that B.J. was a Rollin 90s gang member. Carjacking is one of that gang's signature crimes. Rollin 90s gang members often commit carjackings with members of other cliques of the Neighborhood Crips, such as the Rollin 40s (as B.J. had done previously), or in those cliques' territories (as was the case here). And as was the case here, they often wear socks on their hands while doing so. Carjacking a "high-end" car like an Audi would help a young gang member like B.J. earn respect from older gang members by permitting him to commit additional crimes that financially benefit the gang. Committing the crime on the gang's Hood Day would allow B.J. to demonstrate his loyalty to the gang. This evidence is sufficient to

6

support Officer Resurreccion's opinion that B.J. committed his crimes for the benefit of the Rollin 90s gang.

The cases on which B.J. relies do not require a contrary conclusion. Like the situation here, in none of the cited cases did the defendant "call out a gang name, display gang signs, wear gang clothing, or engage in gang graffiti while committing" their crimes. (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 662; see *People v. Franklin* (2016) 248 Cal.App.4th 938, 950; *People v. Ramirez* (2016) 244 Cal.App.4th 800, 819.) But unlike the situation here, those defendants' crimes did not occur in gang-targeted territory or on their gangs' Hood Days. Those factors sufficiently distinguish this case to support the juvenile court's findings.

*Carjacking allegation*

B.J. contends, and the Attorney General concedes, the juvenile court's true finding on count 3 should be reversed because carjacking is a lesser included offense of kidnapping during the commission of a carjacking. We agree.

When the juvenile court determines that a minor committed "both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the [finding] on the greater offense, that [finding] is controlling, and the [finding] of the lesser offense must be reversed. [Citations.]" (*People v. Sanders* (2012) 55 Cal.4th 731, 736; *In re Marcus T.* (2001) 89 Cal.App.4th 468, 471.) Here, the court found true allegations that B.J. committed kidnapping during the commission of a carjacking (count 1) and carjacking (count 3). The latter is a lesser included offense of the former. (*People v. Montes* (2014) 58 Cal.4th 809, 898.) Both offenses arose out of the same course of conduct, and B.J. does

7

not challenge the true finding on count 1. The findings on count 3 and its attendant allegations must thus be reversed. (*Ibid.*)

*DJJ commitment*

B.J. contends, and the Attorney General concedes, that the juvenile court erred when it ordered him committed to DJJ custody. The parties are correct: A minor is eligible for DJJ commitment only if "the last offense that was adjudicated to have been committed" is listed in section 290.008, subdivision (c), or Welfare and Institutions Code section 707, subdivision (b). (*In re D.B.*, *supra*, 58 Cal.4th at p. 947; see Welf. & Inst. Code, § 733, subd. (c).) B.J.'s "last offense that was adjudicated"—resisting or obstructing a peace officer—is not listed in either subdivision. The commitment order must therefore be vacated.

Our concurring colleague deems this result "absurd," and concurs only "under compulsion of *In re D.B.*" (Conc. opn. *post*, at p. 1.) But it is not only *In re D.B.* that compels the result we reach here; it is the plain language of Welfare and Institutions Code section 733, subdivision (c), itself—something this court has recognized previously. (See *In re A.O.* (2017) 18 Cal.App.5th 390, 393 [Welfare and Institutions Code section 733, subdivision (c), "'lends itself to only one reasonable interpretation'"].) Moreover, the Supreme Court decided *In re D.B.* more than three years before B.J. committed his crimes, giving prosecutors ample notice of the requirements of Welfare and Institutions Code section 733, subdivision (c). Had they wanted to avoid the result that statute requires, they could have easily exercised their discretion at the charging stage. They did not do so.

B.J. also contends the juvenile court failed to exercise its discretion and consider the facts and circumstances of his case

8

when it set his maximum commitment term.  (See Welf. & Inst. Code, § 731, subd. (c); *In re Julian R.* (2009) 47 Cal.4th 487, 495.)  Because we are vacating the DJJ commitment order, we do not resolve this contention.

Finally, B.J. points out that the DJJ commitment form contains several clerical errors:  It states that the commitments for various offenses were stayed pursuant to Welfare & Institutions Code section 654 rather than that section of the Penal Code, and cites to "1022.53(B)&(E)(1)PC" rather than section 12022.53 for the firearm enhancements.  Because we are vacating the commitment order, these errors no longer exist.  We presume any new commitment form will accurately reflect the juvenile court's judgment.

## DISPOSITION

The juvenile court's true finding on the carjacking allegation in count 3 is reversed.  The order committing B.J. to DJJ custody is vacated, and the matter is remanded for a new dispositional hearing.  In all other respects, the judgment is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>


TANGEMAN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

9

YEGAN, J., Concurring:

I concur under compulsion of *In re D.B.* (2014) 58 Cal.4th 941. An intermediate appellate court is bound to follow Supreme Court precedent where, as here, the presenting facts are not "fairly distinguishable." (*People v. Triggs* (1973) 8 Cal.3d 884, 890-891, disapproved on another ground in *People v. Lilienthal* (1978) 22 Cal.3d 891, 896; see also *People v. Musante* (1980) 102 Cal.App.3d 156 (conc. opn. of Gardner, P. J.).) As Presiding Justice Gardner would say, the Supreme Court is wrong. The statute, if literally applied can lead to, and here does lead to, an absurd result as a matter of law.

The Supreme Court should reconsider the rule articulated in *D.B.* There, the Supreme Court recognized the problem but said that the language chosen by the Legislature was not "so absurd" to warrant rejection of the plain language. (*In re D.B.*, *supra*, 58 Cal.4th at p. 948.) In my view, something is either absurd or it is not absurd. Absurdity has many synonyms according to the Merriam-Webster dictionary: asininity, betise, fatuity, folly, foolery, foppery, idiocy, imbecility, inanity, insanity, lunacy, and stupidity. (See Merriam-Webster dictionary, https://www. merriam-webster.com/dictionary/ absurdity.) It has a unique meaning in the law. (See, e.g., *People v. Clayburg* (2012) 211 Cal.App.4th 86, 88.) The courts follow the "plain meaning rule" but we should not subscribe to the "'dictionary school of jurisprudence.'" (*Ibid.*) For example, I cannot believe that the Legislature actually intended that a juvenile who is apprehended for an offense that would qualify for Division of Juvenile Justice (DJJ) commitment is precluded where the juvenile, upon arrest therefor, assaults a peace officer. This is

1

the "plain meaning" of the statute and it is absurd. I am still waiting for someone to tell me that it is not absurd.

Our hypothetical question at oral argument in this matter further illustrates the absurdity here at play: a juvenile commits a murder with a firearm. On the way home he stops at a market and steals a coke. The police arrest him when he gets home. The prosecutor charges murder with the use of a firearm and the petty theft. The juvenile court sustains both substantive charges and finds the use of a firearm allegation to be true. He cannot be committed to the DJJ. He must be treated at the local level. This is beyond unwise. It is absurd. A premium is placed on committing more "disqualifying" crimes after a juvenile commits a qualifying crime.

The statute chills the prosecutor's charging power and discretion. And, it does more than chill the judicial "sentencing" process. It shackles the juvenile court and requires it to impose an unjust "sentence" because of the charging process. The separation of powers principle of government is undermined by the *D.B.* holding.

Public safety cannot and should not be ignored. The statute does little, if nothing, to foster public safety. We are fortunate that no one was killed or suffered great bodily injury as a result of appellant's offenses. I agree with the juvenile court that these offenses, committed by this juvenile, warrant a commitment to DJJ. No one can logically argue to the contrary.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

2

Christopher J. Smith, Judge

Superior Court County of Los Angeles

_____

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Idan Ivri and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.