[No. B072240. Second Dist., Div. Seven. Dec. 7, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
DION BERNARD BROWN, Defendant and Appellant.

COUNSEL

Jill M. Bojarski, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Tricia Ann Bigelow and Zaven V. Sinanian, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—A jury convicted appellant of making "terrorist threats" (Pen. Code,[1] § 422; counts 5 and 6), intimidating witnesses (§ 136.1, subd. (c)(1); counts 7 and 8), being a felon in possession of a firearm (§ 12021, subd. (a); counts 9 and 10) and found true firearm use (§ 12022.5; counts 5, 6, 7, and 8) and prior felony conviction allegations (§§ 667.5, subd. (b) and 667, subd. (a)).[2] Appellant was sentenced to a 15-year, 8-month state prison term.

Appellant contends: (1) section 422 prohibits only unconditional threats and therefore he did not violate it and (2) he is entitled to additional custody credits.

We conclude both contentions are correct and accordingly reverse the section 422 convictions, correct the abstract of judgment regarding custody credits but otherwise affirm the convictions and judgment.[3]

---

[1] Statutory references, unless otherwise noted, are to the Penal Code.

[2] The jury found appellant not guilty of firearm assault (§ 245, subd. (a)(1); counts 1 and 2), interfering with another person's constitutional rights (§§ 422.7/417, subd. (a)(1); counts 3 and 4), and found not true "Nationality" allegations (§ 422.75; counts 5 and 6).

[3] Sentence was stayed on the section 422 counts and therefore reversal of those counts does not affect the sentence.

## FACTUAL BACKGROUND

Since the only dispute is the meaning of a statute, the facts may be stated simply. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

Gloria Ortega, who came to the United States from Guatemala, and Nora Moya, who came to the United States from Mexico, were friends and neighbors. On January 26, 1992, about 6 p.m., they were with their young children walking to Ms. Moya's apartment in the Imperial Court housing project when Ms. Ortega noticed appellant angrily screaming at someone in the nearby parking lot. When she looked at appellant he approached and said "What are you looking at, bitch?"

Appellant then walked to where the two women and their children were standing and told them "he didn't want Hispanic people around [here]." As Ms. Moya was trying to open her apartment door appellant again said to Ms. Ortega, "What are you looking at, bitch?" and pulled out a pistol from the small of his back. Appellant, about two feet from Ms. Ortega, pointed the gun at her temple. She asked him why he was doing this since they weren't doing anything to him. Appellant told her to "shut up." The children were crying when Ms. Moya finally unlocked and opened the doors to her apartment.

Appellant, still holding his gun on Ms. Ortega, said "he didn't like having Hispanic people there and that he was going to get us out of there."

After the children ran into the apartment Ms. Moya pulled Ms. Ortega into the apartment. When Ms. Ortega tried to close one of the two doors, the metal door, appellant stuck his foot in the way. Ms. Moya then said "we should call the police." Appellant, holding his pistol in front of him with both hands, said "if we called the police, he would kill us." Appellant then left.

Two days later, in the afternoon, Ms. Ortega saw appellant come from his nearby apartment toward her apartment and fire a pistol shot into the grass.

Thereafter, the women reported the matter to the police and appellant was arrested.

DISCUSSION

1. *Appellant contends his threat to kill the women if they called the police was not an unconditional threat within the meaning of section 422.*[4]

Section 422 provides: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement is to be taken as a threat, even if there is no intent of actually carrying it out, *which, on its face and under the circumstances in which it is made,* is so unequivocal, *unconditional,* immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

"For the purposes of this section, 'immediate family' means any spouse, whether by marriage or not, parent, child, any person related by consanguinity or affinity within the second degree, or any other person who regularly resides in the household, or who, within the prior six months, regularly resided in the household." (Italics added.)

■ The evidence appellant violated section 422 consisted solely of his statement to Ms. Ortega and Ms. Moya that "if [they] called the police, he would kill [them]."[5] (Italics added.)

Appellant's argument is this: although his statement was a threat "of death" that satisfied the statute's requirements of being "unequivocal . . . , immediate, and specific" it was a *conditional* threat, not an "unconditional" one, as expressly required by the statute. As we explain, appellant is correct.

"The original version of section 422 prohibited threats made with the intent to 'terrorize' another. In *People* v. *Mirmirani* (1981) 30 Cal.3d 375 [178 Cal.Rptr. 792, 636 P.2d 1130], the Supreme Court held that this statute and its companion, former section 422.5, were unconstitutionally vague. Read together, the two statutes criminalized threats made with the intent to

---

[4]We reject the Attorney General's claim that appellant waived this contention by not raising it in the trial court. The contention is equivalent to one of insufficient evidence, a matter of law, always properly reviewable on appeal. (9 Witkin, Cal. Procedure (3d ed. 1985) § 241, pp. 246-247; see also *People* v. *Norwood* (1972) 26 Cal.App.3d 148, 152-153 [103 Cal.Rptr. 7].)

[5]Appellant's other threat (that "he didn't like having Hispanic people there and that he was going to get [them] out of there") did not involve "death or great bodily injury" and was not relied on in the trial court nor by respondent in this appeal.

accomplish ' "social or political goals," ' but that phrase was so all-inclusive and vague that determining what conduct was prohibited was impossible. (*Mirmirani, supra*, at pp. 382-388.)

"The Legislature repealed the statutes in 1987. (Stats. 1987, ch. 828, § 28, p. 2587.) A new and quite different version of section 422 was enacted in 1988. (Stats. 1988, ch. 1256, § 4, pp. 4184-4185.)" (*People* v. *Fisher* (1993) 12 Cal.App.4th 1556, 1558 [15 Cal.Rptr.2d 889].)

This new version was "carefully drafted [by the Legislature] to comport with the detailed guidelines articulated by the *Kelner* court [*United States* v. *Kelner* (2d Cir. 1976) 534 F.2d 1020]." (*People* v. *Fisher, supra*, 12 Cal.App.4th at p. 1560.)

The *Kelner* lead opinion, in construing a federal "threat" statute (which did *not* expressly require the threat be "unconditional") stated: "So long as the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution, the statute may properly be applied." (*United States* v. *Kelner, supra*, 534 F.2d at p. 1027.) Section 422 adopted this language, including the word "unconditional," from *Kelner*.

Inclusion of "unconditional" in the *Kelner* criteria was not surplusage nor happenstance. Justice Mulligan, concurring, focused on the word and disagreed that a threat had to be unconditional to be within the federal threat statute. He gave the example of a threat that in his, but not the lead opinion's, view was within the statute—"We plan to kill Arafat . . . *unless* he pays us $1,000,000." (534 F.2d at p. 1029.)

Even without this legislative history our conclusion would be the same. "The fundamental rule of statutory interpretation is to ' "ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' (*People* v. *Aston* (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111].) In determining intent, the court looks first to the words themselves. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154].) 'When the language is clear and unambiguous, there is no need for construction.' (*Id.* at pp. 1007-1008.) The court will decline to follow the plain meaning of a statute only when to do so would inevitably frustrate the manifest purposes of the legislation as a whole or lead to absurd results. (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].)" (*In re Ge M.* (1991) 226 Cal.App.3d 1519, 1522-1523 [277 Cal.Rptr. 554].)

The plain meaning of an "unconditional" threat is that there be no conditions. "*If* you call the police . . ." *is* a condition.

To—by some linguistic legerdemain—construe "unconditional threat" to include a "conditional threat" would only create "serious constitutional problems." (*People* v. *Mirmirani, supra,* (1981) 30 Cal.3d 375, 382 [178 Cal.Rptr. 792, 636 P.2d 1130].) Reasonable certainty in criminal statutes "is a well established element of . . . due process of law. No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." (*Ibid,* internal quotation marks omitted.)

We hold that a conditional threat, such as appellant's, does not violate section 422. (See *In re David L.* (1991) 234 Cal.App.3d 1655, 1659 [286 Cal.Rptr. 398].)

2. *Appellant contends he is entitled to additional custody credits.*

The trial court awarded appellant 240 days' custody and 120 days' conduct credit. The parties agree that since appellant was in local custody from March 25, 1992, until sentenced on November 20, 1992, he should have been awarded 241 days' custody credit. The 120 days' conduct credit was correct. (*People* v. *Bravo* (1990) 219 Cal.App.3d 729 [268 Cal.Rptr. 486].) We correct the abstract of judgment accordingly.

### DISPOSITION

The abstract of judgment is corrected to show 241 days' "Actual local time" credit and 361 total days' "Credit For Time spent in custody."

Counts 5 and 6 are reversed for insufficiency of the evidence. Since they cannot be retried (*Burks* v. *United States* (1978) 437 U.S. 1 [57 L.Ed.2d 1, 98 S.Ct. 2141]; *People* v. *Belton* (1979) 23 Cal.3d 516, 527 [153 Cal.Rptr. 195, 591 P.2d 485]), the matter is not remanded to the trial court. The abstract of judgment is corrected by deleting reference to counts 5 and 6 (in pt. 1, "Defendant was convicted of the commission of the following felonies").

The judgment, including the state prison sentence of 15 years and 8 months, is otherwise affirmed.

Lillie, P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 23, 1994.