[No. F024370. Fifth Dist. Jan. 17, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIS DIAS, JR., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 2.

**COUNSEL**

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General,

Stan Cross and Michael A. Canzoneri, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### DIBIASO, J.—

#### STATEMENT OF THE CASE

Louis Dias, Jr., was convicted by a jury of kidnapping (count 1, Pen. Code § 207, subd. (a)[1]); burglary of an inhabited dwelling (count 2, § 459); threatening a crime (counts 3 and 4, § 422); and evading an officer (count 5, Veh. Code, § 2800.2). The jury also found with respect to counts 1 through 4 that Dias had personally used a firearm within the meaning of section 12022.5. A defense motion pursuant to section 1118.1 as to all counts was denied.

Dias makes two appellate claims: (1) the convictions on counts 3 and 4 must be reversed because some of the threats made by him were conditional and therefore not in violation of section 422, and it cannot be determined whether the jury based its verdict on such noncriminal conduct; and (2) the conviction on count 1 must be reversed because the trial court failed to fully instruct on the mens rea element of kidnapping.[2]

We will affirm. We hold in part that a threat subject to an apparent condition may violate section 422.

#### STATEMENT OF FACTS

Dias and Sharon married in July of 1980, had two children, and separated in November of 1989, although Dias was opposed to the separation.[3] They eventually divorced. Sharon did not begin dating when she and Dias first separated. In March of 1994, Sharon began seeing James Beatty. When Dias discovered Sharon was dating, his attitude toward Sharon changed, and he became angry and bitter. Dias started following Sharon, and he telephoned her to tell her that he would cause trouble for her if she continued to date Beatty. Sharon contacted the police about Dias's behavior.

On October 7, 1994, Dias arrived at Sharon's to pick up their children for the weekend. An argument ensued, after which Dias left with the children.

---

[1]All statutory references are to the Penal Code unless otherwise specified.

[2]The notice of appeal set forth different issues than those addressed in the briefs. This court's opinion addresses the issues that were briefed. (Cal. Rules of Court, rules 13 & 31.)

[3]Appellant and his ex-wife, Sharon Dias, share the same last name. To avoid confusion, Sharon Dias will be referred to by her first name.

He later called Sharon to inform her that, if she did not stop dating Beatty, he would have to "terminate" her. Sharon immediately called the Turlock Police Department. An officer arrived at her home approximately three hours later, and she filed a report. Sharon left and went to Beatty's home.

Approximately 15 minutes after Sharon arrived at Beatty's, the doorbell rang. Beatty went to answer the door, and before opening it asked for identification. The person identified himself as "Jack." When Beatty opened the door, he faced Dias, who was pointing a fully loaded .357 Smith & Wesson firearm at Beatty. The hammer of the gun was cocked. Dias told Beatty to step back or he would be "dead." Dias began looking for Sharon and calling her filthy names. Beatty called out to tell Sharon her ex-husband had arrived with a gun. Sharon was in a back room and attempted to call the police.

When Sharon came out of the room, she was holding a portable phone in her hand. Dias was angry, and started yelling that he would shoot both her and Beatty because she had called the police. Sharon denied calling the police, saying the line was busy. Dias also stated "I kept telling you and telling you, but you wouldn't listen to me, and so now I'm gonna have to kill both of you." When the phone rang, Sharon did not answer it because Dias emphatically said he would kill both her and Beatty if she did.

Throughout the exchange at Beatty's house, Dias kept the gun pointed at both Sharon and Beatty. Dias wanted Sharon to leave with him so they could "talk." Sharon was reluctant to go, so Dias grabbed her by the arms and headed out the door with Sharon in tow. At no time did Sharon accompany Dias willingly. As Dias was leaving with Sharon, Dias pointed the gun at Beatty and said that, if Beatty called the police, he would come back and kill him.

Dias drove Sharon in Dias's truck toward Sharon's house. When Sharon explained that she did not have her house keys, Dias headed back toward Beatty's home, saying to Sharon, "[i]f you're lying to me, I'm going to kill you." As they approached Beatty's house, they saw a patrol car parked on the street and Beatty in the front yard talking to a police officer. Rather than stopping, Dias sped off. The police gave chase, with the patrol car's siren and light bar activated, at speeds occasionally exceeding 100 miles per hour. After being pursued by the police for approximately five miles, Dias eventually turned the truck's lights off and drove into a muddy field, where the vehicle became mired.

Police officers called out for Dias and Sharon to exit the truck with their hands up. Sharon could not leave because Dias was still pointing the gun at

her and had grabbed her arm. Dias told the officers to leave, as they were on private property. The police warned Dias that if he tried to move the truck, they would shoot out its tires. When Dias engaged the truck's four-wheel drive and moved the vehicle forward, the officers shot its rear tires. The officers chased the truck on foot and sprayed Dias with pepper spray through the open driver's window. Finally, one officer reached in and removed the keys to the truck. The police found the Smith & Wesson, fully loaded, under the driver's seat.

At trial, Dias maintained that he merely wanted to talk to Sharon, did not intend to kidnap her, and had panicked when he saw a patrol car outside Beatty's house.

## DISCUSSION

### 1. Section 422

Section 422 reads in relevant part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

Arguing that some of the threats disclosed by the evidence were "conditional," Dias contends his convictions under count 3 (threats against Sharon) and count 4 (threats against Beatty) must be reversed because qualified threats are not unlawful under section 422 and it "is not possible to determine whether the jury based its verdicts [on these two counts] on the conditional statements." Dias takes the position the language of section 422 clearly and unambiguously proscribes only categorically "unconditional" threats.[4]

Section 422 was enacted as part of the "California Street Terrorism Enforcement and Prevention Act" of 1988. (*People* v. *Brooks* (1994) 26

---

[4]Dias does not claim there is insufficient evidence to support the verdicts on count 3 and count 4 if we hold that a threat couched in conditional terms may be found to violate section 422.

Cal.App.4th 142, 149 [31 Cal.Rptr.2d 283].) We have previously held that *the section does not apply solely to street gang activity and may be applied to individuals. (In re Ge M.* (1991) 226 Cal.App.3d 1519, 1523 [277 Cal.Rptr. 554].) The language of section 422 was taken, almost verbatim, from *United States* v. *Kelner* (2d Cir. 1976) 534 F.2d 1020, 1027. *Kelner* dealt with a federal law prohibiting the communication of a threat in interstate commerce, and evaluated the extent to which punishment for threats was not prohibited by the First Amendment to the United States Constitution. (See *People* v. *Stanfield* (1995) 32 Cal.App.4th 1152, 1159 [38 Cal.Rptr.2d 328].) Later federal cases applying and interpreting *Kelner* and *Watts* v. *United States* (1969) 394 U.S. 705 [22 L.Ed.2d 664, 89 S.Ct. 1399] (upon which *Kelner* relied) held that the conditional nature of a threat did not render it unpunishable. (*People* v. *Brooks, supra,* 26 Cal.App.4th at pp. 146-147 and cases cited therein; see, e.g., *United States* v. *Schneider* (7th Cir. 1990) 910 F.2d 1569, 1570 ["Most threats are conditional; they are designed to accomplish something; the threatener hopes that they will accomplish it, so that he won't have to carry out the threats."].) In general, the federal courts after *Kelner* have concluded that not all threats to perform illegal acts are protected by the First Amendment, and a conditional threat may be culpable depending upon its context.[5] (*People* v. *Brooks, supra,* 26 Cal.App.4th at p. 149.)

▮ Dias has the support of one California appellate opinion. In *People* v. *Brown* (1993) 20 Cal.App.4th 1251 [25 Cal.Rptr.2d 76], the defendant entered the victim's home, held a gun to her head, and threatened to kill her *if* she called the police. The *Brown* court (Division Seven of the Second Appellate District) read the word "unconditional" in section 422 literally, and concluded that the contingent qualification to the threat left the defendant's statements outside the scope of section 422. (*People* v. *Brown, supra,* 20 Cal.App.4th at p. 1254, 1256.)

However, thus far Dias has at least three appellate opinions against him. In *People* v. *Brooks,* a panel of the Fourth Appellate District held that a

[5]The First Amendment implications of punishing threatening language have been exhaustively addressed by federal appellate courts. The Fifth Circuit has explained at length the demarcation between speech which is protected by the First Amendment and that which is punishable under statutes prohibiting threats. In *Shackelford* v. *Shirley* (5th Cir. 1991) 948 F.2d 935, 938, the Fifth Circuit articulated the boundary: "[a]s speech strays further from the values of persuasion, dialogue and free exchange of ideas the first amendment was designed to protect, and moves toward threats made with specific intent to perform illegal acts, the state has greater latitude to enact statutes that effectively neutralize verbal expression. . . . [A]s expansive as the first amendment's conception of social and political discourse may be, *threats made with specific intent to injure and focused on a particular individual easily fall into that category of speech deserving of no first amendment protection.*"

threat to do an illegal act which is dependent upon the occurrence of some other event does not put the threat beyond the reach of section 422. (*People v. Brooks, supra,* 26 Cal.App.4th at p. 142.) The defendant in *Brooks* held a gun to the victim's head and threatened to shoot her *if* she followed through on plans to testify in a pending criminal case. The *Brooks* court found important the phrase in section 422 which provides that the threat must be, inter alia, "so unconditional" as to convey to the victim a gravity of purpose and an immediate prospect of execution. The *Brooks* court reasoned that if "a threat is conditioned on something occurring [which] renders it not a true threat, there would have been no need to include in the statement the word 'so.' " (*People v. Brooks, supra,* 26 Cal.App.4th at p. 149.)

The *Brooks* rationale was applied by Division Two of the Second Appellate District in *People v. Gudger* (1994) 29 Cal.App.4th 310, 321-322 [34 Cal.Rptr.2d 510], which involved threats made against a judge in violation of section 76. The *Gudger* court decided that "[a] literal approach to the so-called conditional language used is not determinative in an analysis of the sufficiency of the evidence guided by First Amendment concerns. The touchstone of our analysis is thus not solely whether the language used in the threat is couched in a conditional grammatical construction. Rather, it is necessary to review the language and context of the threat to determine if the speaker had the specific intent that the statement was to be taken as a threat. We thus agree with the analogous analysis in *People v. Brooks*[, *supra,*] 26 Cal.App.4th [at pp.] 144, 146-149 (' "If you go to court and testify [against fellow gang members], I'll kill you," ' prosecuted under section 422), which focused on the importance of the context of the threats expressed, as distinguished from the approach in *People v. Brown*[, *supra,*] 20 Cal.App.4th [at pp.] 1253, 1255-1256 (' "if we called the police, he would kill us," ' prosecuted under section 422), which focused on a simplistic linguistic analysis of the degree to which the threatening language is couched in conditional words." (*People v. Gudger, supra,* 29 Cal.App.4th at pp. 321-322.)

In *People v. Stanfield, supra,* 32 Cal.App.4th 1152, Division Five of the Second Appellate District also declined to align itself with *Brown* and held that section 422 may be violated by a threat which contains words of condition. In part, the court said:

"The use of the word 'so' [in the statute] indicates that unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim. . . .

" . . . . . . . . . . . . . . . . . . . . . .

"Indeed, the language 'so . . . unconditional' implies that there are different degrees of unconditionality. A threat which may appear conditional on its face can be unconditional under the circumstances. . . ." (*People* v. *Stanfield, supra,* 32 Cal.App.4th at pp. 1157-1158.)

Although the California Supreme Court has not yet directly addressed the issue raised by Dias, in *In re M.S.* (1995) 10 Cal.4th 698 [42 Cal.Rptr.2d 355, 896 P.2d 1365], the court did cite *Gudger* in connection with a discussion of the appellants' argument that section 422.6, a "hate crime" statute, contravenes the First Amendment because it does not "require that a punishable threat be unconditional and imminent." (*In re M.S., supra,* 10 Cal.4th at p. 711.) The court's explanation about why the statute was not unconstitutional on this ground included the following: "Violence and threats of violence . . . fall outside the protection of the First Amendment because they coerce by unlawful *conduct,* rather than persuade by expression, and thus play no part in the 'marketplace of ideas.' As such, they are punishable because of the state's interest in protecting individuals from the fear of violence, the disruption fear engenders and the possibility the threatened violence will occur. [Citation.] As long as the threat reasonably appears to be a serious expression of intention to inflict bodily harm [citation], and its circumstances are such that there is a reasonable tendency to produce in the victim a fear the threat will be carried out [citation], *the fact the threat may be contingent on some future event (e.g., 'If you don't move out of the neighborhood by Sunday, I'll kill you') does not cloak it in constitutional protection.* (See [citation]; *People* v. *Gudger*[*, supra,*] 29 Cal.App.4th [at pp.] 321-323.) Section 422.6, therefore, is not unconstitutional for lacking a requirement of immediacy or imminence." (*In re M.S., supra,* 10 Cal.4th at p. 714, italics added.)

▋ We will align ourselves with those opinions which endorse the proposition that a threat subject to an apparent condition may nonetheless be culpable under section 422. It is unnecessary to burden the appellate reports with further snippets from *Brooks, Gudger,* or *Stanfield.* We simply state that, having considered the question, we agree with *Stanfield* that "[l]anguage creating an apparent condition cannot save the threatener from conviction when the condition is illusory, given the reality of the circumstances surrounding the threat. A seemingly conditional threat contingent on an act highly likely to occur may convey to the victim a gravity of purpose and immediate prospect of execution. It is that end which violates the statute. An absolutely unconditional threat is only one of several means by which that end may be accomplished." (*People* v. *Stanfield, supra,* 32 Cal.App.4th at p. 1158.)

██ Thus, the fact that some of the threats made by Dias were framed in linguistically conditional terms does not require reversal. The trial court fully instructed the jury in the elements of the crime described in section 422, and, in doing so, made it clear that Dias could not be found guilty of a violation of the statute unless, among other things, the prosecution proved beyond a reasonable doubt that a threat was "so unequivocal, unconditional, immediate and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat." The jury was also instructed in the language of CALJIC No. 17.01 that "in order to return a verdict of guilty to Count [3] or Count [4], all jurors must agree that [Dias] committed the same threat." We must presume the jurors followed these instructions.[6] (*People* v. *Delgado* (1993) 5 Cal.4th 312, 331 [19 Cal.Rptr.2d 529, 851 P.2d 811].)

2. *CALJIC No. 3.30 Instruction.**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### DISPOSITION

The judgment is affirmed.

Ardaiz, Acting P. J., and Buckley, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 16, 1997.

---

[6]Dias also contends that because some of the threats shown by the evidence were conditional, and therefore outside the scope of section 422, it was error for the trial court to deny his section 1118.1 motion for acquittal to the extent it included count 3 and count 4. Consideration of this claim is now unnecessary.

*See footnote, *ante*, page 46.