Filed 5/31/13  P. v. Martinez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JERRY GALINDO MARTINEZ,<br><br>    Defendant and Appellant. | F063957<br><br>(Super. Ct. No. CRL003761)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Donald J. Proietti, Judge.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and John W. Powell, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant Jerry Galindo Martinez of (1) stalking while a court order was in effect (Pen. Code, § 646.9, subd. (b),[1] count 1), (2) attempting to dissuade a witness from prosecuting a crime (§ 136.1, subd. (b)(2), count 2), (3) attempting to prevent and dissuade a witness from testifying (§ 136.1, subd. (a)(2), count 3), (4) 11 counts of making criminal threats (§ 422, counts 4 through 14), (5) 14 counts of misdemeanor disobeying a court order (§ 273.6, subd. (a), counts 15 through 27 and 29), and (6) misdemeanor resisting a police officer (§ 148, subd. (a)(1), count 33).

Martinez challenges the sufficiency of the evidence to support the stalking and criminal threats convictions. He also contends the trial court erred by (1) admitting evidence of a prior act of domestic violence, (2) failing to issue a unanimity instruction on the stalking offense, (3) failing to instruct sua sponte on the lesser included offense of attempted criminal threats, and (4) imposing consecutive terms when sentencing.

We agree there was insufficient evidence to sustain the criminal threats conviction on count 7. We reject all of Martinez's other contentions. We thus will reverse the count 7 conviction and affirm the judgment in all other respects.

### FACTUAL AND PROCEDURAL SUMMARY

Elizabeth Orduno dated Martinez for about four years. It was a volatile relationship and they argued frequently. They had a child together, a daughter, who was three years old at the time of trial.

On July 22, 2009, a restraining order was issued that prohibited Martinez from contacting Orduno. The restraining order was the result of an incident of domestic violence committed by Martinez against Orduno. The restraining order was to remain in effect until July 14, 2012.

On June 24, 2010, Martinez sent three threatening text messages to Orduno's sister, Amanda. The threats were directed at Orduno. The messages read: (1) "Watch.

_____

[1]All further statutory references are to the Penal Code unless otherwise stated.

2.

She pushed me too far. Something is going to happen to her"; (2) "I'm going to fuck all you niggas off." "[I]f you have to get my girl, I'm going to get my kid, and if [Orduno] don't call me, I'm going to burn her grandma's house down"; and (3) "I'm on my way u better get ready for war because she is there ha ha mother fuckers."

Amanda was scared by these messages and notified the authorities. Sheriff's Deputy William Hibdon was dispatched in response to the call. When Hibdon arrived, Amanda appeared frightened. After reading the text messages, Hibdon called Orduno, who sounded nervous and frightened. Orduno was scared for her daughter's safety. Martinez was convicted of a misdemeanor in connection with the text messages sent to Amanda.

On September 3, 2010, around 5:39 p.m., Police Officer Jesus Parras was dispatched to an address where a caller indicated an individual was violating a court order. Parras arrived at the address and spoke with Orduno. She appeared to be nervous, scared, and upset. Orduno had received two threatening voice mail messages and multiple threatening text messages from Martinez during the day.

In the first voice mail, Martinez used multiple profanity and other offensive words. The message concluded with "Do what the fuck you want just don't let me catch you slippin' cause I'm gonna slash you when I catch you. And I'll be out looking for your ass tonight." The second voice mail also included profanity and contained several more threats, including: "I'm not playing with you, I will fucking kill you," "You better fucking die bitch," "Gonna shoot your mother fucking ass bitch," "I hope you fucking scared bitch," and "I'm fucking taking your life bitch." The voice mails became the basis of the count 4 offense.

After playing the voice mails for Parras, Orduno used her cell phone to e-mail the 10 text messages to Parras. The 10 text messages read:

3.

1. "I not stopin till ur daed bitch to nite" (count 5);

2. "Nope bitch u got another thing cum u fucked wit the wrong person oh ya im goin around tonite doin damage u think dis is a game bitch d" (count 6);

3. "Bitch plzz i changen 4 no one bitch exspecaly a bitch like u" (count 7);

4. "Pick up u scared like a bitch u wer never goin to cum ova ene ways u think im stupid i know ur another guy bitch i will catch u both e" (count 8);

5. "I jus got my gun back to day to bitch best beleave im goin to make it worth it u fucken dumd ass slut u dont know how to keep ur leggs" (count 9);

6. "I jus left ur nanas im on my way over to wer ur at trust me i will find u after I go threw a coupal house watch bitch I got sumthing f" (count 10);

7. "I told u bitch dont fuck wit me but noo u always set me off wats next bitch u cum n c me now u cant cuz im invisable bitch" (count 11);

8. "I want u dead im sick of u playen me for foo i dnt fuck wer ur at im shooting everything watch bitch" (count 12);

9. "Bitch ur fucken threw wen i c u yes i do have a gun now bitch u better run cuz im goin to shoot ur ass bitch n who ever ur wit u thin" (count 13);

10. "Fucken scandolous ass bitch im goin to fuck kill u bitch" (count 14).

Orduno told Parras she was afraid. She stated she had been sleeping with a knife under her pillow and was not sleeping in the living room area of the house because she was afraid Martinez would shoot at the house. Parras issued an alert to take Martinez into custody. After Parras left, Orduno spoke with Martinez around 8:00 p.m. that night and again around midnight. In the early morning of September 4, 2010, Orduno met up with Martinez and they went to a local park to have sex.

Later on September 4, Parras saw Martinez in the passenger seat of a parked vehicle; Martinez's cousin also was in the car. Parras called for backup and the two were taken into custody. Martinez was transported to jail, where he was given warnings

4.

pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Martinez spoke with the authorities and at first "refused to admit to anything." Subsequently, in the same interview, Martinez claimed he was drunk and did not remember anything and then claimed he did recall sending the messages but had never threatened Orduno. Martinez claimed he loved Orduno and did not want to kill her but had intended to scare her.

Martinez called Orduno from the jail on September 4. In that recorded jailhouse conversation, Orduno stated:

> "I'm gonna actually be able to fuckin' walk the streets safe and not have to look over my fuckin' shoulder, okay? You did this to yourself. I didn't fuckin' do anything to you. I told you you can't say these things, you can't do these things. You need to fucking learn."

The Merced County District Attorney filed an information charging Martinez with 33 separate offenses. Prior to trial, the trial court granted the prosecution's motion to dismiss four counts.

At trial, Orduno testified that she was not frightened by Martinez's voice mail or text messages. She acknowledged, though, that her statements to Parras about sleeping with a knife under her pillow and the reason she would not sleep in the living room area of her home were true. Orduno claimed her family had pressured her to call the police; she feared if she did not do so, her family would kick her out of the house.

Parras testified regarding the multiple voice mail and text messages from Martinez and his (Parra's) conversation with Orduno. Amanda and Hibdon testified regarding the text messages Martinez sent to Amanda in 2010. Martinez's pretrial statements and the jailhouse call between Martinez and Orduno were admitted into evidence.

The prosecution presented testimony from Detective Justin Melden, who qualified as an expert on domestic violence. Melden testified that victims of domestic violence often recant their pretrial statements about incidents of abuse. Melden also testified to what law enforcement officers refer to as the cycle of violence: a violent incident, followed by a calm phase, the make-up phase, the tension phase, and then another violent

incident, with the cycle repeating itself. He opined that the cycle can complete itself within as little as one hour or be drawn out over a number of weeks; the cycle repeats itself numerous times in an abusive relationship.

The jury convicted Martinez of all remaining 29 charges. The trial court found probation had been violated in three other cases. At the sentencing hearing, the trial court imposed a sentence of 17 years 4 months in the instant case and in the three cases in which probation had been violated.

## DISCUSSION

### I. Sufficiency of the Evidence

Martinez challenges the sufficiency of the evidence to support the stalking and criminal threats convictions. With the exception of the count 7 conviction for criminal threats, the People disagree with Martinez's contentions.

#### *Standard of Review*

In assessing a claim of sufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 317-320.)

The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. (*People v. Stanley* (1995) 10 Cal.4th 764, 792.) "'"'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is

susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. '" If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" [Citations.]'" [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

### *Stalking*

Martinez argues there was no evidence Orduno suffered substantial emotional distress; thus, he claims there was no harassment within the meaning of section 646.9.

A conviction under section 646.9 requires that the defendant have (1) willfully, maliciously, and repeatedly followed or harassed another person, (2) conveyed a credible threat, and (3) intended the threat to place the person in reasonable fear of his or her safety or the safety of immediate family. (§ 646.9, subd. (a).) Section 646.9, subdivision (e) defines "harass" as engaging in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person and serves no legitimate purpose.

Martinez quotes and relies upon a prior definition of the term "harass" that was contained in the statute from 1990 to 2002. (Stats. 1990, ch. 1527, § 1, pp. 7143-7144.) Section 646.9, however, was amended in 2002. (Stats. 2002, ch. 832, § 1.) The case cited by Martinez in support of his contention, *People v. Ewing* (1999) 76 Cal.App.4th 199, was decided before the 2002 amendments to section 646.9 and therefore is not persuasive.

The prosecution here was required to prove that Martinez engaged in a knowing and willful course of conduct directed at Orduno that seriously alarmed, annoyed, tormented or terrorized her. The prosecution was not required to establish that Orduno suffered substantial emotional distress. The prosecution established that Martinez sent a

7.

series of messages to Orduno, both voice mail and text. Those messages conveyed threats of harm to Orduno and/or to her immediate family; and Orduno was seriously alarmed about the threats, which is why she notified police and took to sleeping with a knife under her pillow for protection.

We think *People v. Uecker* (2009) 172 Cal.App.4th 583, 595-596 (*Uecker*) is helpful. In *Uecker,* the defendant placed calls to a real estate agent but refused to tell her how he obtained her contact information and refused to provide the information she needed in order to determine if the defendant qualified to purchase a home. When the agent tried to cut off contact, the defendant continued to call her. The agent stated the defendant's actions made her feel "afraid and trapped." (*Id.* at p. 596.) The appellate court upheld a conviction for stalking under section 646.9. (*Ibid.*)

Like *Uecker*, the evidence here established that Martinez's conduct constituted harassment of Orduno under section 646.9.

### Criminal Threats Convictions

Martinez raises two challenges to his criminal threats convictions. First, he contends all must be reversed because there was insufficient evidence the threats caused Orduno to be in sustained fear, as required by section 422. Second, he argues that the content of the messages in counts 7 and 11 did not constitute a credible threat.

#### Sustained Fear Analysis

As used in section 422, "sustained" has been defined to mean "a period of time that extends beyond what is momentary, fleeting, or transitory.… The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear. [Citation.]" (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) "Fifteen minutes of fear of a defendant who is armed, mobile, and at large, and who has threatened to kill the victim and her daughter, is more than sufficient to constitute 'sustained' fear for purposes of this element of section 422." (*Ibid.*) "Sustained" fear may amount to less than one minute, depending on the circumstances, such as when a

8.

defendant brandishes a weapon and threatens to kill someone. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 (*Fierro*).)

The evidence established that Martinez sent numerous messages to Orduno, both text and voice mail, over a period of time on September 3, 2010. When Parras was dispatched to Orduno's residence the evening of September 3 in response to a call that Martinez was violating a court restraining order, Parras spoke to Orduno. She appeared nervous, scared, and upset. She shared with Parras the voice mail and text messages she had received from Martinez that day. She told Parras she was afraid and was sleeping with a knife under her pillow. She also stated she was scared that Martinez was going to shoot at her house.

At trial, Orduno contradicted her statement to Parras and claimed she was not frightened by Martinez's messages. She acknowledged, though, that she had been sleeping with a knife under her pillow and was afraid to sleep in the living room of her house. Melden testified as an expert on domestic violence and informed the jury that victims of domestic violence often recant their statements to authorities about domestic violence.

Obviously, there was conflicting testimony—Parras testified to Orduno's statements to authorities about the domestic violence; Orduno recanted some of her statements in her trial testimony; and Melden explained victims of domestic violence often recant their testimony.

It is the province of the jury to assess credibility of witnesses and resolve conflicts in evidence. "[A] reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

9.

The jurors here were entitled to credit Parras's testimony regarding Orduno's statements to authorities at the time of the events, to reject Orduno's testimony recanting her statements to Parras, and to rely upon Melden's testimony to explain Orduno's actions.

### Credible Threat Analysis

As to count 7, the People concede that the content of the message did not convey a credible threat and thus the conviction should be reversed. The text message that was the basis of the conviction read: "Bitch plzz i changen 4 no one bitch exspecaly a bitch like u." Though crude and offensive, this message did not contain a threat of death or great bodily injury to any person and we therefore will reverse the count 7 conviction.

Count 11, however, was supported by substantial evidence. The text message that formed the basis of the conviction read: "I told u bitch dont fuck wit me but noo u always set me off wats next bitch u cum n c me now u cant cuz im invisable bitch."

An implied or conditional threat, which this was, may violate section 422. Otherwise innocuous language has been deemed a violation of the statute if the words are understood as a threat of harm when looking at the circumstances and conduct of the defendant. (See *Mendoza* (1997) 59 Cal.App.4th 1333, 1340 (*Mendoza*).) Similarly, threats made conditional on conduct that is highly likely to occur are punishable under the statute. (See *People v. Bolin* (1998) 18 Cal.4th 297, 339; *People v. Dias* (1997) 52 Cal.App.4th 46, 53.) "The jury is 'free to interpret the words spoken from all of the surrounding circumstances of the case.' [Citation.]" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1433.)

Here, taken in context, Martinez's threat of harm to Orduno was clear. Martinez had left voice mail and text messages telling Orduno he would be out looking for her and intended to slash, shoot, or otherwise harm her if he saw her. Telling her "dont fuck wit me," that she "set" him "off," and that he was now "invisable" reasonably can be

interpreted as Martinez sending Orduno a message reminding her that he was angry with her, watching for her, and waiting for an opportune moment to cause her harm.

The jury reasonably concluded the text message forming the basis of the count 11 conviction, under the circumstances, constituted a threat under section 422. (*People v. Wilson* (2010) 186 Cal.App.4th 789, 807.)

### *Conclusion*

Section 422 targets those who, like Martinez, seek to instill fear in others. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 861.) There was sufficient evidence to support the counts 4, 5, 6, 8, 9, 10, 11, 12, 13, and 14 convictions for violating section 422. The evidence was insufficient to support the count 7 conviction.

## II. Admission of Prior Acts Evidence

The prosecution filed a motion in limine seeking to admit evidence of a prior act of domestic violence committed by Martinez, for which he was convicted of a misdemeanor. The motion sought to admit the evidence pursuant to Evidence Code sections 1101, prior crimes or acts, and 1109, other acts of domestic violence. Defense counsel objected to the admission of this evidence on the basis that "Martinez already entered a plea on that. I don't understand the relevance."

The trial court overruled the relevancy objection and indicated the "testimony will be admitted subject to any objections to the testimony." Defense counsel renewed an objection to the testimony and clarified for the trial court that the objection was only on the basis of relevancy.

On appeal Martinez contends the trial court erred in admitting the evidence, characterizing the act as against Amanda. He thus argues that it was not an act of domestic violence, as defined by statute, because he and Amanda were not in a relationship. He also claims that since he and Amanda were not in a relationship, the prior act was irrelevant. Conversely, he argues the testimony was more prejudicial than

11.

probative; consequently, it was error under Evidence Code section 352 to admit the testimony.

We apply an abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence. (*People v. Waidla* (2000) 22 Cal.4th 690, 724 (*Waidla*).)

Based on our review, we conclude the trial court did not abuse its discretion in admitting this evidence for two reasons. First, Martinez did not challenge the admission of the evidence in the trial court on the basis that it did not qualify as an act of domestic violence or that the probative value was outweighed by the prejudicial impact. Therefore, he has forfeited these contentions on appeal. Second, on the merits of the argument, the act of domestic violence was directed at Orduno, even if communicated through Amanda, and was relevant.

In general, all relevant evidence is admissible. (*People v. Carter* (2005) 36 Cal.4th 1114, 1166.) Trial courts have broad discretion in determining relevancy. (*People v. Hoyos* (2007) 41 Cal.4th 872, 898.) Relevant evidence is evidence that tends to prove or disprove any disputed fact that is of consequence to the determination of the action. (Evid. Code, § 210.) Evidence of prior offenses is relevant if it tends to establish motive, intent, identity, plan, absence of mistake, and any other fact that may be relevant. (*People v. Catlin* (2001) 26 Cal.4th 81, 145-146.) Martinez's not guilty plea put in issue all the elements of the charged offenses. (*People v. Balcom* (1994) 7 Cal.4th 414, 422.)

Amanda and Hibdon testified regarding text messages sent by Martinez to Amanda's cell phone threatening Orduno and her family. Amanda testified she received text messages from Martinez on June 24, 2010, that were threatening and directed toward Orduno. Hibdon testified to the content of the messages: "Watch. She pushed me too far. Something is going to happen to her." The second message stated, "I'm going to fuck all you niggas off." "[I]f you have to get my girl, I'm going to get my kid, and if [Orduno] don't call me, I'm going to burn her grandma's house down." In the third

message, Martinez stated, "I'm on my way u better get ready for war because she is there ha ha mother fuckers." When Hibdon spoke to Orduno on the phone about these text messages, she sounded frightened.

The text messages sent to Amanda were directed at Orduno, were similar in nature to the text and voice mail messages he sent directly to Orduno, and were sent during the same period of time as the messages that were the subject of the charged offenses.

As Martinez claimed he did not intend to harm or threaten harm to Orduno in any of the messages, his intent was in issue. That Martinez recently had sent text messages designed to be threatening toward Orduno and had suffered a conviction for that conduct was additional relevant evidence tending to establish Martinez's intent when he sent the text and voice mail messages to Orduno.

The surrounding circumstances, including the parties' history, may be relevant to a determination of the issues. (*Mendoza, supra,* 59 Cal.App.4th at p. 1340, superseded by statute on other grounds as stated in *People v. Franz* (2001) 88 Cal.App.4th 1426, 1442.) Martinez's history of domestic violence against Orduno, including his prior conviction, were relevant to help establish that she took the threats seriously at the time they were made and she actually and reasonably was in fear.

Moreover, the record provides no reason to conclude the jury misapplied this evidence. The trial court properly instructed the jury on the use of this evidence. We presume the jurors followed the instructions. (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 292.)

The trial court did not err in admitting evidence of the text messages sent to Amanda.

## III. Instructional Error

Martinez contends the trial court erred when it failed sua sponte to give a unanimity instruction requiring the jurors to agree unanimously on the specific conduct

13.

that constituted harassment for purposes of the stalking alleged in count 1. His contention fails because no unanimity instruction was required.

Martinez also maintains the trial court erred prejudicially when it failed to instruct the jury sua sponte on the crime of attempted criminal threats. As noted in part I., *ante,* the evidence was more than sufficient to support all but one of the criminal threats counts. Moreover, error, if any, was harmless.

### *Unanimity Instruction*

A unanimity instruction is not required when the statute contemplates a continuous course of conduct of a series of acts over a period of time. (*People v. Thompson* (1995) 36 Cal.App.4th 843, 851.) Stalking is a crime that contemplates a continuous course of conduct. (*People v. Zavala* (2005) 130 Cal.App.4th 758, 769.) As the appellate court stated in *Zavala,* "there is no need for a unanimity instruction as to individual acts within the course of conduct, because the jury need only agree on whether the defendant committed acts the net effect of which constitutes the statutory offense" of stalking. (*Ibid.*)

Regardless, the trial court did instruct the jury with a form of a unanimity instruction addressing counts 1, 2, and 3. Martinez fails to acknowledge this instruction in his opening brief and does not contend "the instruction as given was erroneous, inadequate, or prejudicial." (*People v. Hayes* (1990) 52 Cal.3d 577, 625.) If any further clarifying or amplifying language was needed, Martinez had an obligation to request it in the trial court or forfeit any claim of error. A "party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language. [Citations.]" (*People v. Andrews* (1989) 49 Cal.3d 200, 218; see *People v. Sully* (1991) 53 Cal.3d 1195, 1218.)

### Attempted Criminal Threats

Martinez contends there was no evidence Orduno was in sustained fear of death or great bodily injury from any of the criminal threats and therefore the jury should have been instructed sua sponte on attempted criminal threats.

As discussed in part I., *ante,* there was substantial evidence Orduno was in sustained fear from Martinez's threats. Consequently, we are upholding the convictions on the section 422 offenses, with the exception of count 7 where we concluded the text message did not constitute a threat. We need not repeat our analysis of the sufficiency of the evidence of sustained fear.

The question of whether the jury should have been instructed about a lesser included offense is reviewed de novo on appeal. (*Waidla, supra,* 22 Cal.4th at p. 733.) "When there is evidence from which the jury could find the lesser included offense was committed, the trial court must instruct on it even if inconsistent with the defense elected by the defendant. [Citations.]" (*People v. Brito* (1991) 232 Cal.App.3d 316, 326, fn. 9.) Failure to instruct on a lesser included offense requires reversal if it is reasonably probable the jury would have returned a verdict more favorable to the defendant absent the error. (*People v. Breverman* (1998) 19 Cal.4th 142, 164-165 (*Breverman*).)

We acknowledge there was some conflicting evidence on the issue of sustained fear because Orduno recanted in part her pretrial statements to authorities. We, however, conclude the evidence of sustained fear was overwhelming. This conclusion is based on (1) Orduno's continued acknowledgement at trial that the voice mail and text messages from Martinez caused her to sleep with a knife under her pillow, (2) Parras's testimony regarding Orduno's pretrial statements and his own observations, (3) Melden's expert testimony that domestic violence victims often recant, and (4) case law establishing that the sustained fear element may be brief. Any evidence of a lack of sustained fear was very slight and, as the trial court necessarily determined, not substantial enough to

warrant consideration by the jury of the lesser offense of attempted criminal threats. (*Breverman, supra,* 19 Cal.4th at pp. 161-162.)

Regardless, assuming it was error to fail to instruct on attempted criminal threats, any error was harmless. (*Breverman, supra,* 19 Cal.4th at p. 178.) First, as we noted, the evidence of sustained fear was overwhelming. The sustained fear required by section 422 may amount to less than one minute, depending on the circumstances, and certainly the fear that causes one to sleep with a knife under a pillow at night is of sufficient length to satisfy the statutory requirement of sustained fear. (*Fierro, supra,* 180 Cal.App.4th at p. 1349.)

Second, there is no claim by Martinez that the jury instructions on the substantive offense of violating section 422 were deficient or altered the prosecution's burden of proof. Absent some affirmative indication in the record to the contrary, and there is none here, we presume the jury followed the instructions given. (*People v. Holt* (1997) 15 Cal.4th 619, 662.) Therefore, the record establishes that the properly instructed jury resolved the factual issue of whether the prosecution proved beyond a reasonable doubt that Orduno suffered sustained fear adversely to Martinez and reversal is not required. (*Breverman, supra,* 19 Cal.4th at p. 165.)

Third, the elimination of a basis to find Martinez guilty could only have inured to his benefit. The crime of attempted criminal threats required less proof in that the prosecution was not required to prove beyond a reasonable doubt that Orduno suffered sustained fear as a result of Martinez's threats. If the jury had not found the element of sustained fear to have been proven beyond a reasonable doubt, it would have acquitted on the criminal threats counts. Absent a showing of prejudice, a defendant may not complain of instructional error favorable to him. (*People v. Lee* (1999) 20 Cal.4th 47, 57.)

Under the facts of this case, it is not reasonably probable the result would have been more favorable to Martinez if the jury had been instructed on attempted criminal

threats. Consequently, any error in failing to instruct the jury so is not prejudicial and reversal is not required. (*Breverman, supra,* 19 Cal.4th at pp. 164-165.)

## IV.     Sentencing

Martinez contends the trial court erred when it imposed consecutive sentences for each of his 11 criminal threats convictions. He argues the consecutive sentences were improper under section 654 because the crimes constituted a single, indivisible course of conduct. Section 654, subdivision (a) provides:

> "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19; see *People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) Whether there was more than one intent or objective is a question of fact for the trial court and the trial court's determination will be upheld on appeal if there is substantial evidence to support it. (*People v. Nelson* (1989) 211 Cal.App.3d 634, 638.)

At sentencing, defense counsel argued that the sentences imposed on counts 4 through 14 should be stayed pursuant to section 654. The trial court rejected Martinez's argument that the threatening messages were all an indivisible course of conduct and found that even though the voice mails and text messages were sent "over a relatively short period of time, each continued separately." Substantial evidence supported the trial court's finding.

Each threatening message was sent separately, each message contained different threatening language, and each was a complete and discrete act under section 422. In

17.

count 4, Martinez threatened in a voice mail to "slash" Orduno; in count 5, he threatened in a text message he would not stop until Orduno was dead; and in count 6, Martinez threatened in a text message to do "damage" that night. The count 8 text message warned Orduno about being with another male and that Martinez would "catch" them; in count 9, Martinez sent a text stating he had just gotten his gun back and would "make it worth it"; and in count, 10 Martinez's text stated he had just left Orduno's "nana[']s" and was on his way to her location, where he would search every house until he found her. In count 11 Martinez warned Orduno "dont fuck wit me" and that she "always set [him] off"; the count 12 text told Orduno "I want u dead"; in count 13, Martinez told her he had a gun and would shoot her and anyone she was with; and in count 14, Martinez stated he was going to "fuck kill you bitch."

Although Martinez's voice mail and text messages were sent to Orduno on one day throughout the day, that does not require as a matter of law that they be treated as an indivisible course of conduct for purposes of section 654. (See *People v. Felix* (2001) 92 Cal.App.4th 905, 915-916). In *Felix* the appellate court concluded the defendant could be punished for two criminal threats made on the same date and the trial court reasonably could infer that because the defendant was angry, he intended the second threat to cause new emotional harm. (*Ibid.*)

As in *Felix*, each of Martinez's criminal acts was discreet and complete when committed and a reasonable inference can be made that each voice mail and text was intended to cause new emotional harm. The trial court did not err in imposing consecutive sentences for counts 4, 5, 6, 8, 9, 10, 11, 12, 13, and 14.

## DISPOSITION

The count 7 conviction is reversed; in all other respects the judgment is affirmed. The trial court shall prepare an amended abstract of judgment and forward it to the appropriate authorities.

_____
CORNELL, Acting P.J.

WE CONCUR:


_____
GOMES, J.


_____
POOCHIGIAN, J.

19.